**WINDOW SYSTEMS, INC. and De Vac, Inc.**

v.

**MANCHESTER MEMORIAL HOSPITAL and Standard Builders, Inc.**

**Civ. No. H–75–403.**

United States District Court, D. Connecticut.

Nov. 29, 1976.

---

Irving H. Perlmutter, New Haven, Conn., R. Gregory Leonard, Morristown, N. J., for plaintiffs.

John D. LaBelle, LaBelle, Rothenberg & Woodhouse, Manchester, Conn., for Manchester Memorial Hospital.

Robert J. Cathcart, Shipman & Goodwin, Hartford, Conn., for Standard Builders, Inc.

## RULING ON DEFENDANTS' MOTIONS TO DISMISS AND MOTION TO STRIKE

CLARIE, Chief Judge.

The defendants, Manchester Memorial Hospital and Standard Builders, Inc., have filed joint motions pursuant to Rules 12(b) and 12(f), Fed.R.Civ.P., requesting that the Court dismiss this action and that it strike impertinent matter from paragraphs 13 and 14 of the complaint. The dismissal motion alleges that the plaintiffs lack standing to bring the suit and that their complaint fails to state a claim upon which relief can be granted. The plaintiffs' allegations are founded upon the premise that since federal funds were allotted under the Hill-Burton Act to partially finance this hospital renovation project, the regulation, 42 C.F.R. § 53.128(c), promulgated pursuant to that law, requires competitive bidding. Thus it is claimed that this regulation creates an implied private right of action in the plaintiffs to legally contend, that it was the lowest responsible bidder and that its bid was unlawfully rejected. The plaintiffs represent that the aforesaid federal regulation placed them within the zone of interest to be protected under the law and as such they have standing to challenge the awarding of the window bid to Earl R. Smith, Inc., supplier of the "Litex Window."

After the bids had been reviewed and evaluated by the owner's architect, the latter certified the Litex window to be a comparably equal product to the plaintiffs' "De Vac Window" and that it satisfied the quality standards prescribed under the plans and specifications submitted to the bidders. The plaintiffs claim that the architect's certification of their competitor's product to be substantially equivalent to the De Vac window constituted an abuse of professional discretion. They assert that this action slandered the marketability of their product and was likely to cause the company irreparable harm in the future. The plaintiffs represent that such architectural approval would permit the supplier to publish in the building trade journals, that the Litex product after evaluation had been found equal in quality, function and durability to that of the plaintiff.

They have also requested permission in a separate motion to cite in as parties defendant the members of the architectural firm, as well as the supplier, Earl R. Smith, Inc.

After hearing the arguments of counsel and reviewing the exhibits, affidavits, and memoranda of the parties and all other papers on file, the Court finds that the plaintiffs do not have legal standing and the defendants' motion to dismiss is granted.

## FACTS

The plaintiff, Window Systems, Inc., is a New Jersey corporation acting as a franchise distributor of a window manufactured by De Vac, Inc., a Minnesota corporation. In addition the company also fabricates metal frame windows which are generally used in public buildings, hospitals, schools and institutions. Its franchise agreement with De Vac gives it the right to sell the latter's product in parts of New York, New Jersey and Connecticut.

The defendant, Manchester Memorial Hospital, is a local public health care facility located in Manchester, Connecticut. It operates under the laws of the State of Connecticut and is supervised by its own local board of trustees. Presently the hospital is engaged in a modernization project, involving construction and alterations which included the installation of a number of new metal frame windows for which it contracted with the defendant, Standard Builders, Inc., to do the work. Part of the funds used to finance this construction were provided by the federal government under the Hill-Burton Act; and the parties generally agree that the regulations promulgated under that law, including 42 C.F.R. § 53.-128, are applicable.

As general background information, it should be noted that before the bids were sent out, De Vac had voluntarily installed a sample window in the hospital building. (Tr. 46–47). The trustees liked the product and so advised their architect. (Tr. 46). When the latter prepared the bid specifications, he included what was substantially the basic standards of quality, function and design as those described in the advertising literature relating to the De Vac product. The architect testified that he had never previously used, or heard of either the De Vac or the Litex window. (Tr. 26). In drawing up these bid specifications, however, he used the technical descriptive literature used in describing the De Vac product, including such details as requiring stainless steel non-magnetic screws in the window assembly. He explained that it was common practice in the industry for an architect to use sample window specifications that satisfied the standards of the A–2 requirements, including the performance test, the strength of the metal, the visual appearance and other properties.

Seven firms were requested to bid; however, only three bids were received, which were publicly opened on January 14, 1975. They included the plaintiff, Window Systems, Inc., supplier of the De Vac window, $118,123; Earl R. Smith, Inc., the supplier of the Litex "200 series" window, $113,950; and Modern Window Company, $89,895. The lowest bidder's submission was rejected, because its product failed to meet the contract specifications. This left the plaintiff De Vac as the highest bidder by $4,173.

After the opening of the bids the plaintiff, Window Systems, Inc., notified the owner's contractor, Standard Builders, Inc., that there was an alleged non-conformity with the bid specifications and protested the proposed award of the contract to Earl R. Smith, Inc. Before making a final decision, the owner's contractor requested that Litex procure a professional laboratory test of its windows, to ascertain whether or not it met the minimal bid specifications. Accordingly, on March 4, 1970, Litex requested the Detroit Testing Laboratory for such a report, which was completed and a response made of its findings on March 19, 1970. These tests, however, had been completed in 1970 and 1974 and were ruled out because they were too remote in time. Therefore, a new test was requested on May 22, 1975, which was reported back on May 30, 1975. (Tr. 4). These laboratory tests together with assurances of Litex as to the "temper quality" of the material, satisfied the architect, that the Litex product was equal to the standards set forth in the bid specifications of 8/J/A. (Tr. 18, 28,

30). The architect conceded that he had made no independent tests on his own. (Tr. 13, 18, 23). The architect did represent, however, that he had evaluated the windows pursuant to the standard spelled out in specification 16.1.1 of the bidding standards and found the Litex product to be acceptable. (Tr. 28). This bid specification stated:

"Any material, article or piece of equipment of other manufacturers or vendors which will perform adequately the duties imposed by the general design will be considered equally acceptable . . . provided the material, article, or piece of equipment so proposed is, in the opinion of the architect, of equal substance, appearance and function." (Tr. 8–9).

The architect admitted that he had prepared the bid specifications and had used the plaintiffs' window as a standard. In addition there were basic A–2 standards, which the ASTM test specified that the successful bidder had to satisfy. (Tr. 19). He explained that in this case the Litex product compared favorably in all necessary categories of the specifications. (Tr. 21–23). He testified that some of the details in the plaintiffs' product, such as non-magnetic screws were not essential. (Tr. 32). The architect explained that the test was based on the principal of air infiltration and that this was the laboratory test which the successful bidder passed. (Tr. 30, 33, 35, 48). The architect stated that this judgment was based upon 25 years of experience in the checking of shop drawings, and processing them and seeing how they behaved in the field. (Tr. 42).

## ISSUES

The underlying issue in this case is whether or not the plaintiffs have legal standing to bring an action challenging the awarding of a contract to the lowest responsible bidder, where the architect retained by the owner has determined that the product quality of the accepted bid meets the specifications.

## DISCUSSION OF THE LAW

The legal issue of standing is especially significant in public contract matters such as this, when one considers the widespread federal policy of allotting federal matching funds encouraging the advancement of public projects, at state and local levels, as well as in the private eleemosynary sector. Absent any allegation of fraud, collusion or bribery in this case, there still remains the question of whether or not a federal court should exercise its general equitable powers of judicial review, to consider product quality concerns raised in protest by an unsuccessful bidder.

The traditional rule governing a challenge to bidding procedures is that an unsuccessful bidder lacks standing to bring suit challenging their legality.[1] In *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127, 60 S.Ct. 869, 876, 84 L.Ed. 1108 (1940), the Court said:

"Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases. Acting through its agents as it must of necessity, the Government may for the purpose of keeping its own house in order lay down guide posts by which its agents are to proceed in the procurement of supplies, and which create duties to the Government alone. It has done so in the Public Contracts Act. That Act does not depart from but instead embodies the traditional principle of leaving purchases necessary to the operation of our Government to administration by the executive branch of Government, with adequate range of discretion free from vexatious and dilatory restraints at the suits of prospective or potential sellers. It was not intended to be a bestowal of litigable

1. Connecticut state courts are in accord with this rule. *See Joseph Rugo, Inc. v. Henson,* 148 Conn. 430, 171 A.2d 409 (1961); *Austin v. Housing Auth. of City of Htfd.,* 143 Conn. 338, 122 A.2d 399 (1956).

rights upon those desirous of selling to the Government; it is a self-imposed restraint for violation of which the Government—but not private litigants—can complain." (Footnote omitted).

*Also see, Edelman v. Federal Housing Admin.,* 382 F.2d 594, 597 (2d Cir. 1967); and *Clement Martin, Inc. v. Dick Corp.,* 97 F.Supp. 961 (W.D.Pa.1951).

However, a recent line of federal agency action cases has emerged, which if applicable here, would tend to erode the *Perkins* holding. The hallmark case in this area is *Scanwell Laboratories, Inc. v. Shaffer,* 137 U.S.App.D.C. 371, 424 F.2d 859 (1970), in which an unsuccessful bidder, on an instrument landing system bid sued the Federal Aviation Administration. The plaintiff was granted standing to challenge that agency's final action under the Administrative Procedure Act (APA) 5 U.S.C. § 701 *et seq. See also, Hayes International Corp. v. McLucas,* 509 F.2d 247 (5th Cir. 1975); *Merriam v. Kunzig,* 476 F.2d 1233 (3rd Cir.), *cert. den.* 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973); *Wilkie v. United States,* 485 F.2d 180 (4th Cir. 1973).

■ The plaintiffs here could not obtain and rightly do not seek review of the defendants' actions under the APA. Judicial review under the APA is limited to those persons aggrieved by a Federal agency's actions. *Scanwell* and its progeny represent challenges to overt action of a particular Federal government agency. In the instant action, however, the plaintiffs challenge the action of an indirect beneficiary of Federal government funds. The defendant hospital's relationship to the Federal government is so attenuated, as to preclude labeling its actions in awarding the bid to Smith as that of a Federal government agency. *See Gibson & Perin Co. v. City of Cincinnati,* 480 F.2d 936 (6th Cir.), *cert. den.* 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473

(1973). In addition, the APA is not applicable to suits between private parties. *American Postal Workers Union v. Independent Postal System,* 349 F.Supp. 1297 (E.D. Mich.), *aff'd* 481 F.2d 90 (6th Cir.), *cert. gr.* 414 U.S. 1110, 94 S.Ct. 839, 38 L.Ed.2d 737 (1973), *cert. dis.* 415 U.S. 901, 94 S.Ct. 936, 39 L.Ed.2d 459 (1974); *Solien v. Miscellaneous Drivers and Helpers Union,* 440 F.2d 124 (8th Cir.), *cert. den.* 403 U.S. 905, 91 S.Ct. 2206, 29 L.Ed.2d 680 (1971).

Therefore, while the Hill-Burton Act, 42 U.S.C. § 291 *et seq.,* does not explicitly preclude judicial review under the APA, the absence, here, of direct Federal agency action in awarding the contract in dispute militates against finding the APA applicable. Since *Scanwell* grants standing to challenge direct Federal agency action under the APA, that line of cases is distinguishable from the cause pressed here.

■ The plaintiffs also argue that they have standing under the zone of interest test enunciated in *Association of Data Processing Svc. Org., Inc. v. Camp,*[2] 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1971). This relaxed standard grants standing to those plaintiffs asserting an interest intended to be protected by the statute or constitutional guarantee upon which they hinge their case. *Id.* at 152–53, 90 S.Ct. 827. The plaintiffs here, however, are outside of the zone of interest intended to be protected by the Hill-Burton Act and the regulations promulgated thereunder, more specifically 42 C.F.R. § 53.128(c).

■ The applicable zone of interest in a given case is determined by an examination of the explicit purpose of the relevant statute, its regulations and/or its legislative history. The Act's declared purpose, 42 U.S.C. § 291, evinces no concern on Congress' part to protect unsuccessful bidders. Its declared purpose is limited to (1) the

---

**2.** Since the Court's inquiry is limited to a comparison of the Litex window with the Invitation for Bid, the relief which it could accord the plaintiffs here would amount solely to the direction of the defendants to reject the Litex window. *M. Steinthal & Co. v. Seamans,* 147 U.S.App.D.C. 221, 455 F.2d 1289 (1971). The Court will not inquire whether the De Vac window meets the specifications better than Litex. Under these facts, therefore, *quaere* whether the plaintiffs have met the restricted injury in fact aspect of standing required by *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

construction and modernization of community hospitals in order to furnish adequate medical care to all people and (2) stimulation of research and development of new or improved physical facilities.[3] It does not mention any restrictions or conditions under which such contracts are to be let, nor does it make any provision for judicial review for aggrieved bidders. Since "lack of hospital facilities . . . represents one of the weakest spots in our national health structure," the statute's purpose is to foster research and construction of improvements in the physical plants providing medical care. Senate Comm. on Educ. and Labor, Report to Accompany S.S. Rep. No. 674 (79th Cong., 1st Sess. 3 (1945).

In addition it should be noted that several courts have interpreted § 291, as an attempt by Congress to provide a cause of action to indigent persons who were denied medical care. *Saine v. Hospital Author. of Hall Cty.,* 502 F.2d 1033 (5th Cir. 1974); *Euresti v. Stenner,* 458 F.2d 1115, 1119 (10th Cir. 1972); *Corum v. Beth Israel Medical Ctr.,* 359 F.Supp. 909 (S.D.N.Y. 1973). This is consistent with the legislative history of the Act. *Hearings on S. 191 Before the Senate Comm. on Educ. and Labor,* 79th Cong., 1st Sess., at 190–91 (1945). This is not the plaintiffs' purpose in pursuing the present litigation. Therefore, they cannot place themselves within the zone of interest intended to be protected by § 291, as that section's concern is *solely* directed toward furnishing adequate medical services. Consequently, 42 U.S.C. § 291 affords these plaintiffs no colorable claim.

The whole thrust of the Hill-Burton Act denotes an intent on Congress' part to promote the purposes set forth in § 291. Congress intended to regulate relations between the Surgeon General, the Department of Health, Education and Welfare (HEW), and the relevant state agency, in order to set up a smooth running, coordinated program of medical care. It is notable that primary responsibility for the implementation phase of the program is placed in the state agency's hands. Senate Report No. 674 states that the Act was structured to "encourage the States to assume the responsibility for carrying out the program to the greatest possible extent, consistent with a proper check upon expenditure of Federal appropriations." *Id.* at 7. Such a grant of local autonomy in the implementation phase is compelling proof that Congress did not intend to provide for challenges by unsuccessful bidders in the awarding of contracts.

The only references in the Act to the physical construction phase of the project is a broad grant of power to the Secretary of HEW, to prescribe regulations regarding the general standards of construction and equipment for facilities, 42 U.S.C. § 291(b). In response thereto, the Secretary promulgated 42 C.F.R. § 53.128(c). This regulation provides in part

> "that [the] applicant will perform actual construction work by the lump sum (fixed price) contract method; employ adequate methods of obtaining competitive bidding prior to awarding the construction contract, either by public advertising or circularizing three or more bidders, and award the contract to the responsible bidder submitting the lowest acceptable bid. . . . "

By requiring the applicant hospital's acquiescence, § 53.128(c) intends solely to make the hospital a party to the State construction requirements imposed in § 53.125.

---

3. Title 42 U.S.C. § 291. *Congressional declaration of purpose*

"The purpose of this subchapter is—
(a) to assist the several States in the carrying out of their programs for the construction and modernization of such public or other nonprofit community hospitals and other medical facilities as may be necessary, in conjunction with existing facilities, to furnish adequate hospital, clinic, or similar services to all their people;

(b) to stimulate the development of new or improved types of physical facilities for medical, diagnostic, preventive, treatment, or rehabilitative services; and

(c) to promote research, experiments, and demonstrations relating to the effective development and utilization of hospital, clinic, or similar services, facilities, and resources, and to promote the coordination of such research, experiments, and demonstrations and the useful application of their results."

However, the plaintiffs' reliance on this regulation to sustain the proposition, that it has standing to challenge the defendants' award of the bid to Smith, is ill-founded, since it was clearly not the intention of the Congress to do so.

■ Section 53.128(c) is a contract provision between the Federal government and the applicant hospital only. It was intended to protect the Federal government, not unsuccessful bidders. The plaintiffs, therefore, are outside of the zone of interest intended to be protected by this assurance.

In *Morgan Assoc. v. United States Postal Svc.,* 387 F.Supp. 947 (S.D.N.Y.), *aff'd on other grds.* 511 F.2d 1223 (2d Cir. 1975), a second lowest bidder sought to overturn the grant of a contract for improvements at a Post Office to the lowest bidder. The District Court denied the plaintiff standing to sue, on the ground that the Post Office Reorganization statute explicitly excluded review of Post Office actions (except rate-making) under the APA. Therefore, the court concluded, "the interest of Morgan Associates as an unsuccessful bidder has been excluded from and is *not* 'arguably within the zone of interests to be protected.' " (emphasis in original) 387 F.Supp. at 950.

Specific limit judicial review is likewise provided under § 291h of the Hill-Burton Act. However, it is restricted to state agency challenges of the Surgeon General's determinations. Although this section does not explicitly exclude review by disappointed bidders, its absence is conspicuous and persuasive evidence that Congress did not intend to provide such review. The Court finds that the plaintiffs' interest, therefore, is not one of the interests intended to be protected by the Hill-Burton Act.

■ Even in cases in which the plaintiff may be found within the zone of interest, judicial review may be precluded, when the challenged decision of the agency is committed by law to its discretion. 5 U.S.C. § 701(a)(2). Discretion in the agency will be recognized when the determination in question requires the exercise of expert judgment within the special competence of the agency rather than an essentially legal determination. *Panama Canal Co. v. Grace Lines, Inc.,* 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958). *Panama Canal* involved a suit by a private party over the determination of toll rates for the Canal Zone. The court dismissed the action by concluding that this decision was peculiarly within the competence of the Canal Company since it involved "questions of judgment requiring close analysis and nice choices." Id. at 318, 78 S.Ct. at 758.

This same proposition was cited by the Court in *Pullman, Inc. v. Volpe,* 337 F.Supp. 432 (E.D.Pa.1971), a suit by an aggrieved bidder to overturn a state agency grant of a contract for railroad cars to the lowest bidder. The Court found that a determination of the suitability of railroad cars for a particular purpose was essentially a technical engineering decision better suited to agencies whose expertise included such matters. Since such controversies do not present issue of law ripe for determination by an agency of legal expertise, they are best left to those qualified to make such choices. *Id.* at 439.

■ Likewise in the case at bar, the plaintiffs have asked the Court to compare the relative merits of its window against the Litex window and the Invitation for Bid. (IFB). There has been no allegation of fraud or collusion. Instead the plaintiffs allege that the Litex window does not substantially conform to the IFB. Such an allegation asks the Court to compare the quality of two windows. This is not a legal inquiry but a technical one in which the Court is "a singularly unqualified participant." *Pullman* at 439. The IFB for the 8J/A window is comprised of fourteen pages of specifications and design data. Consequently, in the absence of any legal inquiry, the determination sought here is best left to the discretion of the architect and the general contractor who are singularly qualified to deal with such matters.

The *Scanwell* court, in addition to finding judicial review available under the APA, based its decision on the policy argument

that the granting of standing to unsuccessful bidders would be a healthy check on governmental procurements. Such arguments are not persuasive here. In the government procurement situation, there is no group which routinely oversees the letting of contracts by government agencies. Under the Hill-Burton Act, however, the Connecticut State Health Department, the Surgeon General, and the Secretary of HEW review the applicant hospital's proposed plans and its compliance after construction. These groups are equipped to perform the necessary technical evaluations of quality control, thus making judicial review superfluous in that area. As stated in *Pullman, supra,*

> "Since Congress has provided for the participation of two organizations with expertise in the particular area of concern, and the courts are a singularly unqualified participant in such considerations, it is reasonable to believe that in the absence of a specific provision for reviewability, Congress intended matters of the type involved here to be within the discretion of the Secretary and the local authority." *Id.* at 439.

In close conjunction with the oversight argument is the appealing theory, that the plaintiffs stand as private attorney generals in such a case. Its application, however, is precluded by the Court's finding that the plaintiffs are not within the zone of interests intended to be protected by the Hill-Burton Act.[4] *Pullman, supra* at 440.

Although a balance must be struck between hindering governmental activities and protection of the public interest in securing the most favorable cost-benefit ratio in any project, here sufficient safeguards operate in the form of the three government agencies designated by Congress to review plans under the Hill-Burton Act. There is no need for a fourth review by the Court. Therefore, the defendants' motion for dismissal of plaintiffs' complaint is granted, because of the plaintiffs' lack of standing to sue. SO ORDERED.

---

4. Similarly the plaintiffs cannot assert that the private attorney general theory in the absence of injury in fact is applicable here. *Sierra Club v. Morton,* 405 U.S. 727, 737, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).