**RUBBER MILLERS, INC., Plaintiff,**

v.

**The UNITED STATES, et al., Defendants.**

**Civ. A. No. 84–1954.**

United States District Court, District of Columbia.

Oct. 9, 1984.

A.W. Breiner, Theodore A. Breiner, Alexandria, Va., for plaintiff.

Joseph DiGenova, U.S. Atty., Royce C. Lamberth, Robert E.L. Eaton, Jr., Asst. U.S. Attys., Washington, D.C., for defendants; Michael W. Clancy, Trial Atty., Naval Facilities Engineering Command, Dept. of the Navy, Alexandria, Va., of counsel.

## MEMORANDUM

OBERDORFER, District Judge.

Rubber Millers manufactures sea fenders, devices that act as cushions between a vessel and a dock. The Navy has issued a solicitation for berthing improvements at the Naval Air Station (Truman Annex) in Key West, Florida. Plaintiff alleges that this solicitation includes a subcontract with a specification that describes, to the exclusion of plaintiff's product, a marine fender manufactured by Seaward International. Rubber Millers claims that these specifications unlawfully prevent it from effectively competing for the procurement as a subcontractor, in violation of 10 U.S.C. §§ 2301, 2304, and 2305. The prime contractors' bids have been opened but no prime contract for the facility and therefore no subcontract for fenders has been let. Meanwhile, the plaintiff has protested the solicitation to the Comptroller General.

This matter comes before the Court on the defendants' motion to dismiss, which is based on the theory that the plain language of section 133(a) of the Federal Courts Improvement Act, 28 U.S.C. § 1491(a)(3), vests in the Claims Court "exclusive" jurisdiction over pre-award relief. Because the Court concludes that the plaintiff lacks standing to bring this suit, however, it is unnecessary to reach the question of whether the Claims Court has exclusive jurisdiction over actions like this one.

■ The starting point for standing analysis in this type of case is *Control Data Corp. v. Baldridge*, 655 F.2d 283 (D.C.Cir. 1981), *cert. denied*, 454 U.S. 881, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981). In *Control Data*, major manufacturers and suppliers of computer systems for the government protested new rules embodying specifications that prevented them from bidding successfully on government contracts. In the course of determining that the computer manufacturers lacked standing, the Court of Appeals adopted a three-part test for implementing the zone of interest analysis developed by the Supreme Court in *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Three requirements must be satisfied before Rubber Millers may be deemed to have standing:

1) [plaintiff] must allege injury in fact;
2) [plaintiff] must assert that arbitrary or capricious agency action injured an interest arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in

question; 3) there must be no "clear and convincing" indication of a legislative intent to withhold judicial review.

*Control Data, supra,* at 288–89 (footnotes omitted).

Rubber Millers clearly satisfies the injury in fact aspect of the *Control Data* test. Plaintiff alleges that if the Navy is allowed to use the specifications it has included in the solicitation, Rubber Millers will not be able to compete for this or related future government contracts and will be forced out of the government contracting market. The plaintiff has therefore alleged a specific injury that can be redressed by a favorable judicial decision. *See Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); *Control Data, supra,* at 289.

Plaintiff faces a more difficult hurdle in attempting to establish that the interest which it seeks to vindicate is within the zone of interests protected or regulated by the statutory provisions under which the suit is brought. The Court of Appeals has rejected the notion that a plaintiff may act as a private attorney general to protect the public interest once an injury in fact has been sufficiently alleged. *Control Data, supra,* at 291–93. Rather, the Court must determine "that the interest asserted . . . is one intended by Congress to be protected or regulated by the statute under which the suit is brought." *Id.* at 293–94. This is the exclusive means of determining standing where a plaintiff, like Rubber Millers, has not actually bid. Unlike a bidder, Rubber Millers has not "placed in the hands of the representatives of the Government the power to bind [it] to a contract." *Merriam v. Kunzig,* 476 F.2d 1233, 1242 n. 7 (3d Cir.), *cert. denied,* 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973). Moreover, Rubber Millers cannot allege as a special injury the notion that it will be entirely precluded from the government market—it is free to decide whether it will conform to government specifications or withdraw. *See Control Data, supra,* at 293; *cf. Ballerina Pen Co. v. Kunzig,* 433 F.2d 1204 (D.C.Cir.1970), *cert. dismissed,* 401 U.S. 950, 91 S.Ct. 1186, 28 L.Ed.2d 234 (1971) (inclusion of ball point pens on Schedule of Blind-Made Products would have completely excluded plaintiff from the government market). Thus, Rubber Millers has standing only if its interests are within the zone protected or regulated by the relevant procurement statutes.

■ A plaintiff should be found to have standing if the statute contains a slight beneficiary indicia. *Constructores Civiles de Centroamerica, S.A. v. Hannah,* 459 F.2d 1183, 1189 (D.C.Cir.1972) (cited in *Control Data, supra,* at 295). To determine whether Rubber Millers' interests are within the zone of interests protected or regulated by the procurement statutes, the Court must look to the language of those statutes and to their legislative history.

Rubber Millers relies primarily on three provisions of the Armed Services Procurement Act of 1947. 10 U.S.C. § 2301 declares Congress's intent to establish a procurement system for the benefit of national defense and the economy. In pertinent part, section 2301 states:

> [I]t is the policy of the Congress that such contracts . . . will . . . provide incentives to contractors to improve productivity through investment in capital facilities, equipment, and advanced technology.

Section 2301(b) adds that "[i]t is also the policy of Congress that a fair proportion of the purchases and contracts made under this chapter be placed with small business concerns." In this connection, Rubber Millers avers, through the declaration of its Vice-President, that it is a small business within the definition set forth in the Small Business Administration's regulations, 13 C.F.R. part 121, and the Federal Acquisition Regulation, 48 Fed.Reg. 42,242 (to be codified at 48 C.F.R. § 19.102). The second provision on which Rubber Millers relies is 10 U.S.C. § 2304, which requires formal advertising for most purchases and contracts. The relevant language appears in section 2304(a):

Purchases of and contracts for property or services covered by this chapter ... shall be awarded on a competitive basis to the lowest responsible bidder....

Finally, plaintiff refers to 10 U.S.C. § 2305, which sets forth the standards governing formal advertisements for bids. Section 2305(a) states:

The specifications and invitations for bids shall permit such free and full competition as is consistent with the procurement of the property and services needed by the agency concerned.

Rubber Millers also develops its point with citations to the legislative history surrounding the procurement statutes; essentially, these statements indicate that Congress was concerned about maintaining a competitive environment and soliciting the participation of small businesses in the procurement process.[1]

The essence of Rubber Millers' argument is that it has standing because it is a small business competitor in a market that has been restricted by improper agency action. Plaintiff claims that the resulting injury to its ability to compete as a small business is an injury to an interest that the procurement statutes were designed to protect.

█ It is well settled that *bidders* may challenge government procurement actions in proper circumstances. *See, e.g., Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 841–42 (D.C.Cir.1982); *Merriam v. Kunzig, supra*, at 1240–41.

But the plaintiff, a subcontractor, has never submitted a bid to the Navy. Therefore, the question is whether the interests of this plaintiff as a nonbidder arguably fall within the zone of interests protected by the procurement statutes.

The statutory provisions cited by the plaintiff are directed exclusively at "contractors" and bidders. Although Congress may have been concerned about the role that small business competitors would play in the procurement process, it apparently restricted its concern to small businesses that were in a position to enter into a direct bidding or contractual relationship with the government. Because the interests of a disappointed potential *subcontractor* do not fall within the zone of interests arguably protected by the procurement statutes, Rubber Millers does not have standing to sue under the Armed Services Procurement Act. *See Peoples Gas, Light & Coke Co. v. United States Postal Service*, 658 F.2d 1182, 1199–1200 (7th Cir.1981); *Ingersoll-Rand Co. v. United States*, No. 84–0382, slip op. (May 25, 1984). Neither the language of the statute nor its legislative history suggests a contrary conclusion.

The new Federal Acquisition Regulation System (FAR) discussed by the plaintiff does not change this result. The FAR clearly expresses a concern that small business subcontractors be provided with an opportunity to participate in government contracts.[2] Moreover, it is clear that regulations (as opposed to statutes or constitu-

---

**1.** *See* Rubber Millers, Inc.'s Supplemental Memorandum on the Issue of Plaintiff's Standing to Sue at 7–10 (hereinafter cited as Plaintiff's Supp. Mem.); *see also* H.R.Rep. No. 71, 97th Cong., 1st Sess. (1981), *reprinted in* 1981 U.S.Code Cong. & Ad.News 1781.

**2.** Among other things, the FAR sets up "a single regulation for use by all Executive agencies in their acquisition of supplies and services with appropriated funds." 48 Fed.Reg. 42,102 (to be codified at 48 C.F.R. Ch. 1). The regulations cited by plaintiff provide, in pertinent part:
19.201 General policy.
(a) It is the policy of the Government to place a fair proportion of its acquisitions with small business concerns and small disadvantaged business concerns. Such concerns shall also have the maximum practicable opportunity to participate as subcontractors in the contracts awarded by any executive agency, consistent with efficient contract performance.
\* \* \* \* \* \*
(b) Heads of contracting activities are responsible for effectively implementing the Small Business and Small Disadvantaged Business Utilization Programs within their activities .... They are to ... take all reasonable action to increase small business participation in their activities' contracting processes.
19.202–1 Encouraging small business participation in acquisitions.
Small business concerns shall be afforded an equitable opportunity to compete for all contracts that they can perform to the extent consistent with the Government's interest. When applicable, the contracting officer shall take the following actions:
\* \* \* \* \* \*

tional provisions) may give rise to interests sufficient to confer standing on a plaintiff suing for an injury to those interests. *See Gulf Airborne Instruments, supra,* at 842. But it is not enough for Rubber Millers to assert that it is a small business and that any procurement action which *incidentally* affects a single small business subcontractor is an injury to the interests protected by the regulations. Instead, there must be a nexus between the effect of the solicitation decision and the interests protected by the regulation. In this case, if the Navy had promulgated its specification in a way that excluded only small businesses from the procurement process, it might have been injuring interests protected by the FAR. But because the Navy promulgated a specification that would have affected *any* business (large or small) that did not conform, it cannot be said to have taken an action that affects small business interests as such. It seems reasonable to conclude that the FAR does not confer on small business subcontractors a right to sue where other businesses cannot where the challenged action does not implicate a concern peculiar to small businesses. Moreover, contrary to plaintiff's implication, there is no reason to read the FAR as an inference of a congressional intent to include the interests of small subcontractors within the zone of interests protected by the Armed Services Procurement Act. Thus, the mere fact that Rubber Millers is a small business is not enough to give it standing to challenge the Navy's solicitation.

Although neither the plaintiff nor the defendant identifies any congressional intent to preclude judicial review in situations like this one, it is worth noting that the Court's determination that the plaintiff lacks standing is reinforced by the need to balance carefully the statutes and regulations encouraging competition against the statutes and regulations effecting an efficient procurement process. In *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289 (D.C.Cir.1971), for example, the Court of Appeals noted the

strong public interest in avoiding disruptions in procurement, and for withholding judicial interjection unless it clearly appears that the case calls for an assertion of an overriding public interest "in having agencies follow the regulations which control government contracting." 455 F.2d at 1300 (quoting *Scanwell Laboratories v. Shaffer,* 424 F.2d 859, 864 (D.C. Cir.1970)); *see also Ingersoll-Rand Co. v. United States, supra,* slip op. at 6. The statutes and regulations encouraging competition do not sufficiently concern nonbidders and applying those statutes and regulations to parties situated as this plaintiff could unreasonably complicate the procurement process.

Accordingly, an accompanying order will grant the defendants' motion to dismiss the complaint.

## ORDER

For the reasons set forth in an accompanying memorandum, it is this 5th day of October, 1984, hereby

ORDERED: that the defendants' motion to dismiss be, and is hereby, GRANTED; and it is further

ORDERED: that the plaintiff's complaint be, and is hereby, DISMISSED.

---

(d) Encourage prime contractors to subcontract with small business concerns ....

48 Fed.Reg. 42,245; *see* Plaintiff's Supp.Mem. at 10–12.