**AMDAHL CORPORATION, Plaintiff,**

v.

**Malcolm BALDRIGE, et al., Defendants.**

**Civ. A. No. 85–0676.**

United States District Court, District of Columbia.

Aug. 22, 1985.

Edward Dolan, Joseph J. D'Erasmo, Rockville, Md., Shelton H. Skolnick, Regional Counsel, Amdahl Corp., Washington, D.C., for the plaintiff.

George P. Williams, Asst. U.S. Atty., Jerry A. Walz, U.S. Dept. of Commerce, Office

8

503

of Gen. Counsel, Washington, D.C., for Malcolm Baldrige.

D. Michael Fitzhugh, Michael T. Janik, McKenna, Conner & Cuneo, Washington, D.C., for Planning Research Corp.

Mark E. Newell, Latham, Watkins & Hills, Washington, D.C., for ViON Corp.

## MEMORANDUM

BARRINGTON D. PARKER, District Judge.

The plaintiff, Amdahl Corporation, as a disappointed bidder, seeks declaratory and injunctive relief and damages, arising from the denial of an award of a subcontract. The prime contract involved a government procurement transaction. The defendants are the United States Department of Commerce ("DOC"), certain federal officials, and non-federal defendants, Planning Research Corporation ("PRC") and ViON Corporation ("ViON"). The defendants have filed a motion for summary judgment[1] on the grounds that the plaintiff does not have standing to sue and that, therefore, this Court lacks subject matter jurisdiction.[2] On March 27, 1985, the Court heard arguments from the parties on the motion. At that hearing the plaintiff requested, and the Court granted, limited discovery on the standing issue. On the completion of such discovery, the parties submitted additional memoranda of points and authorities. The matter has been fully briefed and considered. For the reasons stated below, the Court determines that the plaintiff lacks standing and that summary judgment should be granted in favor of the defendants.

FACTS

In April 1984, the Department of Commerce awarded a contract to defendant PRC for development and installation of an automated data processing system in the United States Patent and Trademark Office ("PTO"). The overall purpose of the contract was to provide automated data processing equipment and equipment maintenance services to the patent applications process. The requirements of the contract necessitated that the prime contractor, PRC, subcontract in some areas in order to fulfill its contractual obligations. On August 14, 1984, PRC issued a solicitation ("RFP") to acquire computer software and hardware. The subcontract was awarded to defendant ViON in December, 1984.[3] Amdahl submitted a proposal for the subcontract which was not accepted.

Amdahl then filed a complaint to enjoin performance of the subcontract alleging that certain mandatory specifications dealing with software compatibility set forth in the RFP could not be met by ViON. The plaintiff alleges that the subcontract was awarded in a manner inconsistent with federal procurement regulations.[4]

The original solicitation for the prime contract contains provisions which require that Federal Procurements Regulations be adhered to when the prime contractor subcontracted for components. Plaintiff's Opposition to Motion for Summary Judgment at Exhibits 2, 3. In its management plan submitted with its proposal for award of the prime contract, PRC agreed to abide by such Regulations in awarding subcontracts and such a provision was also included in the PRC contract. Non-federal Defendants' Statement of Material Facts, Exhibit 2 at II-5-6. Further, clause 8 of the prime

1. Although the defendants' motion challenges the plaintiff's standing, it has been brought as a motion for summary judgment because affidavits have been filed. See Fed.R.Civ.P. 12(c).

2. Although the federal and non-federal defendants have filed separate motions for summary judgment, the arguments raised in the motions are the same. In addition, the federal defendants explicitly adopted the arguments of the private defendants. All defendants filed a joint reply brief and a joint supplemental brief.

Thus, the Court will treat both motions from defendants as a combined motion.

3. The Court assumes that performance under the contract is now ongoing.

4. The procurement regulations allegedly violated by PRC are found at 41 C.F.R. §§ 1–4.1102–15; 1–4.1102–17; 1–3.802(c)(2); 1–3.805–1. Complaint at ¶¶ 19–22.

contract contains a "Subcontracts" provision which tracks 41 C.F.R. § 1–7.202–8, setting forth requirements for advance notice of subcontracts and for written consent from the government to enter into the subcontracts.[5] Federal Defendants' Motion for Summary Judgment at Exhibit 12.

After Amdahl learned of the award of the subcontractor to ViON, it submitted a Freedom of Information Act ("FOIA") request to PRC regarding the subcontract. PRC rejected the request on the grounds that the FOIA was inapplicable to a private corporation. In January, 1985, Amdahl filed a bid protest with the General Accounting Office (GAO). The GAO responded to the bid protest by raising concerns addressed *infra* at 505 relating to the propriety of reviewing a subcontract protest. At the time this action was filed, GAO had not completed its review or issued an opinion on the jurisdictional issue.

## ANALYSIS

■ There is well established precedent in this Circuit that disappointed bidders, under certain circumstances, have standing to challenge the award of government contracts. *See, e.g., Scanwell Laboratories, Inc., v. Shaffer,* 424 F.2d 859 (D.C.Cir. 1970). However, certain jurisprudential requirements for standing have developed in all areas of the law, including challenges to government contracts. In *Ballerina Pen Co. v. Kunzig,* 433 F.2d 1204 (D.C.Cir. 1970), a three-part test to establish standing was set forth.

First, the party must allege that the challenged action has caused him injury in fact, in order to satisfy the Articled III requirement that he possess 'the personal stake and interest that impart the concrete adverseness' necessary to the existence of a case or controversy. The plaintiff must further allege that the agency has acted arbitrarily, capriciously, or in excess of its statutory authority, so as to injure an interest that 'is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' Finally, there must be no 'clear and convincing' indication of a legislative intent to withhold judicial review.

*Id.* at 1207 (citing *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Scanwell,* 424 F.2d at 869). *See also Control Data Corp. v. Baldrige,* 655 F.2d 283, 288 (D.C.Cir.1981); *cert. denied,* 454 U.S. 881, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981).

■ The question raised with regard to Amdahl's standing to bring this action focuses principally on the zone of interest test. The injury in fact prerequisite can be satisfactorily demonstrated by plaintiffs' status as a disappointed bidder. With a judicial determination that the subcontract award resulted from an arbitrary or capricious decision, the unsuccessful bidder has demonstrated a judicially redressable grievance, *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), despite the fact that it cannot demonstrate that it would have been awarded the contract absent the illegality. *Scanwell,* 424 F.2d at 864; *Aero Corp. v. Dept. of Navy,* 540 F.Supp. 180, 201–02 (D.D.C.1982). In addition, defendants have not contended that there has been any legislative intent to foreclose judicial review of the type of subcontract award which is disputed by these parties.

The zone of interest test involves an examination of the statutes alleged to have been violated in the procurement process to determine whether the plaintiff's interest is that which is sought to be protected by those regulations. *See, e.g., Merriam v.*

---

5. The prime contract apparently contained two additional subcontract provisions, Additional Provision 1 and Additional Provision 2, which track 41 C.F.R. §§ 1–7.303–12 and 1–7.103–28 respectively. There is a dispute among the defendants as to whether those provisions were a part of the prime contract. *Compare* Statement of Material Facts of Non-Federal Defendants at ¶ 2 with Statement of Material Facts of Federal Defendant at ¶ 7.

*Kunzig,* 476 F.2d 1233, 1241–42 (3rd Cir. 1973), (*cert. denied sub nom. Gateway Center Corp. v. Merriam,* 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973)). Plaintiff alleges violations of various federal procurement regulations [6] enacted by the authority of the Federal Property and Administrative Services Act of 1941. 40 U.S.C. § 471 *et seq.* However, prior to an examination of the purpose to be effected, and thus the interests protected, by those regulations, the plaintiff must first face a unique standing problem attendant to its status as a subcontractor. *See Rubber Millers, Inc. v. United States,* 596 F.Supp. 210, 213 (D.D.C.1984); *Ingersoll Rand Co. v. United States,* No. 84–0382, Memorandum at 4–6 (D.D.C. May 25, 1984).

Perhaps the most comprehensive discussion of the factors utilized to determine whether a subcontractor has standing is the Comptroller General's opinion in *Optimum Systems, Inc.,* 54 Comp.Gen. 767 (No. B–183039) (March 19, 1975). In that decision, it was determined that the General Accounting Office will only consider subcontract award protests in certain limited situations: (i) when the contractor acted as a purchasing agent of the government; (ii) where the government has caused or controlled the rejection or selection of a potential subcontractor; (iii) where agency bad faith or fraud in the approval of a subcontractor is demonstrated; (iv) where a contract was made "for" the government; or (v) where the agency is entitled to an advance decision. *Id.* at 773–74. The Court accepts the federal defendants' position that no argument has been advanced by the plaintiff which would invoke the third and fifth exceptions listed above. After an examination of the three remaining situations, the Court determines that Amdahl, as a potential subcontractor, does not have standing to challenge the award of the contract to ViON.

6. See *supra* at n. 4.

7. *See* local rule 1–9(i). Thus, the Court may accept the defendants' assertion as correct. *See*

The first exception promulgated in *Optimum Systems* is where the prime contractor serves as a purchasing agent for the government. That exception is explained only by reference to another Comptroller General opinion, 21 Comp.Gen. 682 (1942). That and a Supreme Court decision cited therein, *Alabama v. King and Boozer,* 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3 (1941), hold that a contractor is only a purchasing agent if it has the power to bind the credit of the government. *See also United States v. District of Columbia,* 669 F.2d 738, 744 (D.C.Cir.1981). However, the defendants point out that the payment provisions clause of the contract, clause 4 (Federal Defendants' Motion for Summary Judgment at Exhibit 4), does not specify any payment to be made by the government to any entity except the contractor; thus, the government's credit is not bound under the contract. Federal Defendants' Statement of Material Facts at ¶ 11. The plaintiff offered no opposition to that interpretation of the contract.[7]

Moreover, various amendments to the subcontract solicitation demonstrate that PRC did not consider itself to be acting as a purchasing agent for the government. Amendment 0005 to the RFP (non-federal defendants' motion for summary judgment at Exhibit 3B), states that the cost of taxes (federal, state and local) should be factored into the proposals for the subcontract. Since the government is exempt from payment of those taxes, *see Alabama v. King & Boozer,* 314 U.S. at 10, 62 S.Ct. at 46, a contractor who considered itself to be a government purchasing agent would not request the cost of tax liability to be included in proposals submitted to it.

A more conclusive statement of PRC's view of its status as a government purchasing agent is found in amendment 0003 to the RFP. Non-federal defendants' motion for summary judgment, Exhibit 3A at Q 41 and 42. In response to questions directed at its solicitation, PRC stated that "this is

*NRM Corp. v. Hercules Inc.,* 758 F.2d 676, 680 (D.C.Cir.1985); *Tarpley v. Greene,* 684 F.2d 1, 6 (D.C.Cir.1982).

not a government RFP," and that "PRC is not an agent of DOC [Department of Commerce] under its prime contract."[8] *Id.*

The plaintiff, however, contends that the fact that PRC agreed to bind itself to various federal procurement regulations in the solicitation of its subcontract weighs heavily in determining that it was indeed a government purchasing agent. That theory is flawed under the specific facts present in this case.

The Brooks Act, 40 U.S.C. § 759, posits the authority to lease or purchase *all* automatic data processing equipment for the federal government in the administrator of the General Services Administration. However, that authority may be delegated to an agency pursuant to 40 U.S.C. § 759(b)(2). Several delegations of procurement authority ("DPA") were made to DOC for the purchase of the equipment necessary to complete the prime contract. *See* Plaintiff's Exhibits 6–10. The DPA, which was redelegated to PRC, stated that

> [The DPA] does require that you achieve maximum promotable competition in satisfying this automatic data processing (ADP) requirement. As such, this DPA requires your compliance with all applicable Federal statutes, policies, and regulations governing the acquisition, management, and utilization of ADP resources.
>
> \* \* \* \* \* \*
>
> Failure to comply with the conditions established herein will render this DPA voidable. If redelegated, it carries with it all stated requirements. Nevertheless,

the original requester will remain responsible for compliance.

Plaintiff's Opposition to Motion for Summary Judgment at Exhibit 6. Thus, the terms of the DPA arguably required the insertion of an agreement to conform with federal procurement regulations into the prime contract package.

■ However, absent other evidence of a purchasing agent relationship, the agreement to comply with federal procurement regulations is only an agreement to follow certain *procedural steps* ; it does not fix PRC's status as a government agent vis-a-vis its potential subcontractors. That agreement can be viewed as a measure designed to protect DOC's ability to maintain its DPA—a legal requirement for the purchase of automated data processing equipment for the federal government.[9] Therefore, under these facts the agreement between the government and PRC to procure in conformance with federal regulations is not a contractual provision for the protection of the potential subcontractor, but for the government. *Cf. Window Systems v. Manchester Memorial Hospital,* 424 F.Supp. 331, 338 (D.Conn.1976) (regulation issued under the Hill-Burton Act and inserted in a contract is intended to protect the federal government not unsuccessful bidders).

The second situation in *Optimum Systems,* giving a subcontractor standing, is where there is direct and active government participation in the contract. That situation is likewise inapplicable. The examples of this sort of direct control cited in *Optimum Systems*[10] all focus on the *actu-*

---

**8.** At that point, PRC also indicated that title to equipment purchased under the subcontract would pass to the government. *See* discussion *infra* at 17.

**9.** This Circuit has held that contractors (and thus subcontractors) are not within the zone of interests protected by the Brooks Act. In *Control Data Corp. v. Baldrige,* 655 F.2d 283, the Court held that a potential bidder did not have standing to challenge regulations issued under the Brooks Act because that Act's interest in "increased competition was expected to inure to the benefit of the government, rather than ADP suppliers." *Id.* at 296.

**10.** The government limited the subcontractor sources and exercised control over every aspect of procurements, such that the prime contractors were "mere conduits." 47 Comp.Gen., *supra.*

The Government required that the prime contractor procure certain ancillary equipment from a particular company. B–162437, August 6, 1968.

The Government 'directly participated in the decision' to reject a subcontract proposal and exclude it from competition on resolicitation based on the Government's negative preaward survey performed at the prime contractor's request. 49 Comp.Gen., *supra.*

*al* behavior of the government in relation to a particular subcontract. The plaintiff asserts that both the solicitation for the prime contract and the management development plan submitted by PRC in response to the prime contract solicitation provide DOC with active source selection authority. *See* Plaintiff's Exhibits 1; 4.[11]

The uncontroverted declarations in this case demonstrate that the Department of Commerce played a very limited role with respect to the award of the subcontract to ViON.[12] The declaration of PRC official directly involved with the subcontract stated that "[t]o my knowledge no Government employee has ever participated in any manner in the deliberations of PRC's Technical Evaluation Board or any of PRC's Cost or Technical Evaluation Panels, nor made a selection decision or participated in PRC's selection decision with regard to the selection of ViON." Non-federal defendants' motion for summary judgment at Exhibit 3, ¶ 6. (Declaration of R. Dale D'Alessio). Further, the government did not evaluate or review any subcontract proposals, engage in any negotiations or discussions with ViON or Amdahl, or make the final subcontractor selection. Federal Defendants' Exhibit 3, ¶¶ 6, 7 (Declaration of Donald W. LeCrone). *See also* Federal Defendants' Exhibit 14, ¶¶ 6, 7 (Declaration of Michael A. Keane). The uncontroverted deposition testimony reveals that PRC, not the government, made the selection of the subcontractor. The government simply concurred with PRC's recommendation.

The agency severely limited the prime contractor's rights of selection of subcontractors and was instrumental in drafting the terms of the subcontract. B–170324, April 19, 1971.
The Government hindered the testing and qualification of a potential subcontractor's product to such an extent that the subcontractor could not receive various awards. B–174521, March 24, 1972.
The Government specifically recommended an award of a subcontract to a particular company. 51 Comp.Gen. 678.
The prime contractor rejected a potential subcontractor since the Government required in the sole-source prime contract that only the product manufactured by another company could be used. Matter of California Microwave, Inc., 54 Comp.Gen. 231 (1974).

D'Alessio dep. at 10–11; LeCrone dep. at 221–22; Keane dep. at 255–56.

It is also clear that after the government received PRC's recommendation, it sought additional documentation in support of the choice. *See, e.g.,* Keane dep. at 269, 271. One month elapsed between the time the recommendation was made and when it was approved. D'Alessio dep. at 13. The deposition testimony indicates that the government's request for more information involved "minimal" contact with PRC. D'Alessio dep. at 60–61. The information was necessary so that the government could determine that there was both adequate documentation to support the recommendation and that the PRC "conducted the procurement properly." LeCrone dep. at 215. *See also id.* at 141–42; 213–14. There is no evidence that the request for additional information was tantamount to dictating the choice of subcontractor. Thus, the government's involvement did not rise to the level of control of subcontractor selection required in *Optimum Systems.* Mere approval of a selection, rather than participation in selection, is not sufficient to bring the subcontract within the *Optimum* exceptions. *Ingersoll-Rand,* Memorandum at 5. *See also In re Pen Foam Insulation Co.,* 78 CPD ¶ 233 (1978).

The deposition testimony does reveal, however, that the government was actively involved in commenting on some aspects of the RFP itself, while it was

Optimum General, 54 Comp.Gen. at 773—74.

11. The fact that the government and PRC may not have adhered to the original terms of their agreement is a question of contract administration which plaintiff has no standing to challenge. *Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d 838, 842 (D.C.Cir.1982). Further, parties to a government contract can agree to alter the terms of the contract. *General Dynamics Corp. v. United States,* 558 F.2d 985, 990–91, 214 Ct.Cl. 607 (1977).

12. Because this ruling is based on what actually transpired, the Court need not evaluate the motives, and thus credibility, of Amendment 0002 to the RFP.

being developed. LeCrone dep. at 130–133. It did suggest changes which were eventually incorporated into the RFP. While government involvement in the preparation of a solicitation has been cited as a factor in determining whether the contractor was acting either for the government, it is only one factor in the calculus. *See, e.g., Optimum Systems, Inc. v. Weinberger,* C.A. No. 75–0320, Mem. at 5 (D.D.C. March 27, 1975); *Lombard Corp. v. Resor,* 321 F.Supp. 687, 690 (D.D.C.1970); *In re Information Consultants, Inc.,* 84–1 CDP ¶ 373 at 3 (1984); *In re S. Kane & Son, Inc.,* 82–2 CPD ¶ 5 at 2 (1982). The Court finds that the government's involvement in the solicitation was not controlling, especially where PRC drafted the original specifications, Keane dep. at 245, and where government officials testified that their comments were never intended to effect the choice of a subcontractor, LeCrone dep. at 224. Since other factors such as management of a government facility and choice of subcontractor are not present in this case, the government's role in the solicitation preparation does not measure up to the type of involvement necessary to trigger standing on the basis of either the agency or government selection criteria.

The third potentially applicable *Optimum* exception is where the contractor's award was made "for" the government. This exception appears to be limited to cases where the contractor is managing a government facility. "[T]he scope of the terms 'for' as used in *Optimum Systems, supra,* [was limited] to the type of contractual relationship found in prime management contracts issued by the Department of Energy and in contracts with prime contractors who operate Government-owned, contractor-operated plants." *In re S. Kane & Son, Inc.,* 82–2 CPD ¶ 5 at 2 [13]. One of the government declarants has stated that "PRC has no responsibility under the prime contract, or otherwise, to operate or manage PTO [Patent and Trademark Office] facilities." LeCrone Declaration at ¶ 8.

■ The plaintiffs further contend that because the title to the equipment purchased under the subcontract passed to the government, the contractor could be said to be acting "for" the government. In *In re Motorola,* 79–2 CPD ¶ 124 (1979), the Comptroller General decision elaborated that unless the prime contract is for the management of a government facility, the fact that title to equipment purchased under the contract passes to the government does not make the purchase "for" the government within the category established by *Optimum Systems.*

## CONCLUSION

Because the Court finds that there is no "intimate involvement" between the government and the prime contract in areas involving either the operation of a government facility or in the solicitation resulting in the award of the subcontract to ViON, it concludes that plaintiff does not have standing to bring this action. *Cf. Lombard Corp.,* 321 F.Supp. at 690 ("The Government and Chamberlain are intimately involved in every aspect of the operation of the Scranton plant"). An appropriate Order accompanies this Memorandum.

## ORDER

In accordance with the attached Memorandum, it is this 21st day of August, 1985,

## ORDERED

That defendants' motion for summary judgment is granted; and

That this action is dismissed with prejudice.

---

**13.** *See, e.g.,* Optimum Systems, Inc. v. Weinberger, No. 75–0320, Memorandum at 4–5; *Lombard Corp. v. Resor,* 321 F.Supp. 687, for examples of where standing was held to exist where the prime contractor managed the government facility.