**CONTRACTORS ENGINEERS INTER-NATIONAL, INC., d/b/a Trans–Vac Systems, Plaintiff–Appellant,**

v.

**UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, Defendant–Appellee.**

No. 91–8177.

United States Court of Appeals, Fifth Circuit.

Dec. 4, 1991.

W. Andrew Patton, Rob S. Hoopes, Kohnen, Patton & Hunt, Cincinnati, Ohio, Gary Zausmer, Bankston, Wright & Greenhill, Austin, Tex., for plaintiff-appellant.

Jeffrica J. Lee, Staff Atty., Barbara C. Biddle, Asst. Director, Dept. of Justice, App. Staff, Washington, D.C., for defendant-appellee.

Before THORNBERRY, DAVIS, WIENER, Circuit Judges.

PER CURIAM:

Plaintiff–Appellant Contractors Engineers International, Inc., which does business under the name of Trans–Vac Systems (Trans–Vac), appeals the district court's dismissal of its suit against the Department of Veterans Affairs (the VA) for lack of standing. Trans–Vac argues that, contrary to the district court's determination, the VA had sufficient direct and active control over subcontractor selection to satisfy the test for disappointed subcontractor standing set forth in *Amdahl Corp. v. Baldrige*.[1] Concluding that the district court did not err in finding that the VA did not have direct and active control over subcontractor selection, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

The George Hyman Construction Co. (Hyman) entered into a contract with the VA to construct a VA Medical Center in Baltimore, Maryland. Trans–Vac submitted a bid for a subcontract to install a pneumatic soiled linen and trash transport system and stationary refuse compaction system (the system) for the medical facility. Hyman did not select Trans–Vac, however, but gave the subcontract instead to AVAC Systems (AVAC), the wholly-owned subsidiary of a Swedish Company.[2] Trans–Vac complained to the VA that AVAC was not qualified under either (1) the quality assurance specifications for the system written by the VA because AVAC lacked personnel and experience, or (2) the Buy American Act because non-American materials would be used to install the system. After requesting and receiving assurances from Hyman that AVAC's system complied with the Buy American Act and met the VA's system specifications, the VA approved the subcontract with AVAC. Nothing in the record suggests that, prior to Trans–Vac's complaint to the VA about AVAC, the VA did anything to influence subcontractor selection other than promulgating the system specifications.

Trans–Vac brought suit in district court, alleging that the VA's approval of AVAC violated both the Buy American Act[3] and the Competition in Contracting Act.[4] Trans–Vac asked the district court for injunctive, declaratory, and monetary relief. The VA moved for summary judgment on the grounds that, as a disappointed *sub*contractor, Trans–Vac lacked standing to sue the VA under either act. The district court granted the VA's motion for summary judgment, agreeing that, under the criteria set forth in *Amdahl*, Trans–Vac did not have standing to sue the VA as a disappointed subcontractor.[5] The district court reasoned that Trans–Vac could have standing under *Amdahl* only if (1) Hyman, the prime contractor, acted as the VA's *de facto* purchasing agent, or (2) the VA controlled or caused the rejection of the subcontractor. The district court determined, however, that Hyman had not acted as the VA's purchasing agent because Hyman did

---

**1.** 617 F.Supp. 501 (D.C.D.C.1985).

**2.** Trans–Vac offers the affidavit of its President stating that in attempting to contact AVAC he learned that it had closed its former office, had no personnel other than a secretary, and was sharing space with the Swedish Trade Office.

**3.** 41 U.S.C. § 10a et seq.

**4.** 41 U.S.C. § 251 et seq.

**5.** The district court granted the VA's motion to dismiss for lack of standing without a memorandum supporting its decision. In denying Trans–Vac's subsequent motion for reconsideration, however, the district court articulated its reasons for finding Trans–Vac without standing. It is this opinion we discuss.

not have the power to bind the VA's credit, and because the mere fact that the VA issued specifications for subcontractors and requested assurances from the prime contractor that it selected a subcontractor who met the specifications does not establish a purchasing agency.[6]

The district court also concluded that Trans–Vac could not prevail on the control criterion in *Amdahl* because the VA did not have direct and active participation in the selection of AVAC or the rejection of Trans–Vac. The court rejected Trans–Vac's argument that the VA was an active participant in the actual selection of a subcontractor simply because the VA issued quality assurance specifications for subcontracts.[7] The district court reasoned that the VA's system specifications amounted to "little more than a government request that the subcontractor be somewhat experienced and qualified." The district court also rejected Trans–Vac's claim that the VA's control over subcontractor selection was evidenced when the VA sought and received assurances from the prime contractor that AVAC met the quality assurance specifications. Finally, the district court rejected Trans–Vac's contention that the VA's control over subcontractor selection through its system specifications was magnified because four or fewer companies compete in the pneumatic linen and trash transport system industry.[8]

Trans–Vac appealed the issue of the VA's control over subcontractor selection to this court.

## II. ANALYSIS

■ The standing issue presented by this appeal is one of first impression for this circuit. In *Amdahl*, the district court for the District of Columbia articulated criteria for determining when a disappointed subcontractor has standing to challenge a government procurement action. The *Amdahl* criteria, which relate principally to the zone-of-interest prong of the test for standing,[9] adopted the factors for determining subcontractor standing identified by the United States Comptroller General in *Optimum Systems*.[10] Under the *Amdahl* criteria, a disappointed subcontractor could have standing to challenge an agency procurement action in any of the following limited circumstances:

(i) when the contractor acted as a purchasing agent of the government; (ii) where the government has caused or controlled the rejection or selection of a potential subcontractor; (iii) where agency bad faith or fraud in the approval of a subcontractor is demonstrated; (iv) where a contract was made "for" the

---

6. Trans–Vac does not raise the purchasing agent criterion on appeal, and we do not discuss it further.

7. The VA's quality assurance specifications for the full vacuum pneumatic linen and trash system and the stationary refuse compaction system state in relevant part:

PNEUMATIC SOILED LINEN & TRASH SYSTEM

B. Criteria:

1. Manufacturer regularly and presently manufactures the item submitted as one of their principal products.

2. There is a permanent service organization maintained or trained by the manufacturer which will render satisfactory service to this installation within eight hours of receipt of notification that service is requested.

3. Installer, or supplier of a service, has technical qualifications, experience and trained personnel and facilities to perform the specified work.

4. Manufacturer's system has been in satisfactory operation on one installation similar to this system for at least one year.

8. Trans–Vac's President stated in an affidavit that the pneumatic trash and linen transport system industry in the United States is composed of fewer than four contractors.

9. This Circuit has adopted a three-part test to determine whether plaintiffs, including disappointed bidders for government contracts, have standing to challenge agency action:

(1) the action must result in injury-in-fact to the plaintiffs, (2) the interest invaded must be arguably within the zone of interest to be protected by the statute, and (3) there must be no statutory prohibition of judicial review. *American Medical Asso. v. Bowen*, 857 F.2d 267, 272 (5th Cir.1988), citing *Baker v. Bell*, 630 F.2d 1046, 1050 (5th Cir.1980). See also 617 F.Supp. at 504.

10. 54 Comp.Gen. 767 (No. B–183039) (March 19, 1975).

government; or (v) where the agency is entitled to an advance decision.[11]

■ To satisfy the "control" criterion in *Amdahl,* the government agency must be actively and directly involved in selecting or rejecting a particular subcontractor. As examples of fact patterns that constitute direct control, the *Amdahl* court noted several decisions cited in *Optimum Systems.* For example, a disappointed subcontractor has been found to have standing to sue when "[t]he government limited the subcontractor sources and exercised control over every aspect of procurements, such that the prime contractors were 'mere conduits.' "[12] In another case, a disappointed subcontractor was found to have standing when the government "severely limited the prime contractor's rights of selection of subcontractors and was instrumental in drafting the terms of the subcontract."[13] In yet another case, a disappointed subcontractor had standing when "[t]he [g]overnment specifically recommended an award of a subcontract to a particular company."[14]

■ Trans–Vac argues that it satisfies the *Amdahl* control criterion because (1) the VA's quality assurance specifications for subcontracts limit the prime contractor to subcontractors meeting these specifications; (2) the effect of the specifications is magnified because the industry is small and there are few potential subcontractors; and (3) the VA's control over subcontractor selection was evidenced when it sought and received assurances from the prime contractor that AVAC met the VA's specifications.[15] We disagree, finding that none of these items, either alone or in combination, give the VA the type of direct and active control over subcontractor selection that is required under *Amdahl.* Like the district court, we find that with its system specifications the VA was merely attempting to dictate the most general requirements of experience and competency—hardly the type of "closed" specifications that would confer control over the selection or rejection of a potential subcontractor. While it is possible, of course, that even very general system specifications could so reduce the set of available subcontractors as to constitute actual control over selection, a slight restriction in subcontractors would not be enough to establish that the agency actually and directly controlled subcontractor selection. In this case, moreover, Trans–Vac provides no evidence to support its allegation that the VA's system specifications *in fact* limited the companies with whom Hyman might subcontract.

Neither do we believe that the VA exercised control when it requested and received assurances from Hyman that AVAC's system complied with the Buy American Act and met the VA's system specifications. The VA's mere verification—following a complaint by or on behalf of AVAC—that AVAC met its system specifications and otherwise complied with the law is not enough to establish the VA's actual and direct control.

Finally, Trans–Vac's argument, that the VA's control over subcontractor selection is magnified by the small number of companies competing in the pneumatic trash and linen transport industry, is unavailing. Like the district court, we are unwilling to conclude that the VA exercised actual control over subcontractor selection simply because the relevant industry is small. The existence of agency control over subcontractor selection must depend primarily on

**11.** 617 F.Supp. at 505, citing *Optimum Systems,* 54 Comp.Gen. at 773–74.

**12.** Id. at n. 10.

**13.** Id.

**14.** Id.

**15.** Trans–Vac contends that this case was improperly decided at summary judgment because it introduced enough evidence of the VA's active participation in subcontractor selection to raise a genuine issue of material fact on the standing question. We believe that Trans–Vac misunderstands what was accomplished with summary judgment. There is no dispute in this case about the material facts. As such, the district court's task when deciding the VA's motion for summary judgment, and our task on review, is to determine whether, given the undisputed facts, the VA is entitled to judgment as a matter of law.

the agency's own conduct, not on the scope of the industry.

## III.  CONCLUSION

Agreeing with the parties that *Amdahl* sets forth the correct criteria for determining whether a disappointed subcontractor has standing to challenge an agency's procurement decisions, we adopt the *Amdahl* test in this circuit.  And because we find that the district court correctly applied *Amdahl* to the facts in this case, we AFFIRM.