**NATIONWIDE ROOFING AND SHEET METAL CO., INC.**

v.

**The UNITED STATES.**

No. 187–87C.

United States Claims Court.

May 13, 1988.

Kenneth R. Klipfer, Dayton, Ohio, for plaintiff.

Eric L. Miller, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## OPINION

MARGOLIS, Judge.

Plaintiff seeks review of the contracting officer's decision under the provisions of the Contract Disputes Act of 1978. The defendant moved for partial summary judgment, which plaintiff opposed. After consideration of the entire record and after

hearing oral argument, the defendant's motion for partial summary judgment is granted.

## FACTS

On August 9, 1984, the Air Force invited several contractors to bid on certain construction work. The contract involved the repair and replacement of the roof of a building located on the Wright-Patterson Air Force Base. Three bids were submitted in response to the invitation.

The bid submitted by ABCO Roofing & Sheet Metal Company (ABCO) was the lowest bid received. ABCO, however, submitted its required bid bond guarantee on the wrong form. Specifically, ABCO used United States Postal Service (USPS) Bid Bond Form 7324 rather than the General Services Administration (GSA) Standard Form 24 (SF–24) specified in the invitation for bids. The contracting officer initially determined this technical deficiency sufficient to render ABCO's bid nonresponsive.

On September 28, 1984, the contracting officer signed a determination of nonresponsiveness regarding ABCO's bid. Accordingly, on September 29, 1984, the Air Force awarded contract No. F33601–84–C–0360 to plaintiff Nationwide Roofing and Sheet Metal Co., Inc. (Nationwide), the next lowest bidder. Nationwide's contract contained provision I–684, which incorporated the standard Termination for Convenience Clause, FAR 52.249–2 (48 C.F.R. § 52.249–2). On October 2, 1984, ABCO submitted a formal protest of the contracting officer's nonresponsiveness determination.

While conducting legal research in reviewing ABCO's protest, the Air Force discovered two General Accounting Office (GAO) bid protest decisions which held that bid bonds with deficiencies similar to those in ABCO's bid bond do not render the bid nonresponsive. This discovery, defendant argues, rendered the Air Force's award to Nationwide a violation of the procurement regulations, which require that the contract be awarded to the lowest-priced, responsive bidder. On the basis of these GAO prece-

dents, the Air Force reversed its determination that ABCO's bid was nonresponsive.

Therefore, to comply with procurement regulations that require a contract be awarded to the lowest responsive bidder, on or about October 11, 1984, the Air Force, pursuant to provision I–684 of the contract, terminated the award to Nationwide for the convenience of the government. Nationwide then filed a bid protest with the GAO. On April 22, 1985, the Comptroller General issued a decision on Nationwide's protest upholding the Air Force's reliance on GAO precedent to establish ABCO's bid as responsive and upholding the Air Force's decision to terminate Nationwide's contract for the convenience of the government.

On October 20, 1986, Nationwide filed a certified claim with the Air Force seeking $107,687.71 for breach of contract damages including attorney's fees, bid preparation costs, material costs, and anticipatory profits. On December 4, 1986, the contracting officer issued a final decision denying Nationwide's claim. On April 6, 1987, Nationwide filed this action, seeking to reverse the contracting officer's final decision to terminate the contract and seeking breach of contract damages.

## DISCUSSION

Both parties agree the termination for convenience clause set out at 48 C.F.R. § 52.249–2 is found in provision I–684 of the contract. Nationwide argues that the Air Force's termination of its contract constitutes, as a matter of law, a breach of contract. The Air Force counters that it properly terminated Nationwide's contract pursuant to the standard termination for convenience clause incorporated into the contract and that there was no evidence offered by Nationwide to support its allegations of "bad faith." In short, the Air Force claims it acted properly under the termination for convenience clause.

■ The doctrine of termination for convenience enables the government, under certain circumstances, to terminate a contract that is no longer in the government's interest. *See, e.g., United States v. Cor-*

*liss Steam-Engine Co.*, 91 U.S. (1 Otto) 321, 23 L.Ed. 397 (1876); *see also* Moss & Gantt, *A Steam Engine and Contract Termination Settlement Procedure*, 8 Pub. Cont.L.J. 188 (1976). In the instant case, the language giving the Government the right to terminate is brief and very broad:

> The Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest.

48 C.F.R. 52.249–2 (1984).

■ While this language is broad, the courts have consistently recognized limitations on the government's right to invoke this extraordinary doctrine. In *Torncello v. United States*, 231 Ct.Cl. 20, 681 F.2d 756 (1982), the Court of Claims limited the application of the termination for convenience clause to those instances involving "changed circumstances." *Torncello* involved a requirements contract in which the termination for convenience clause was used to take advantage of another firm's lower price, which the government had known about when awarding the contract to the contractor. The court held for the contractor and went on to state that "the government may not use the standard termination for convenience clause to dishonor, with impunity, its contractual obligations." *Id.* at 47, 681 F.2d at 772. The court continued: "We cannot condone termination based on knowledge of a lower cost when that knowledge preceded award of the contract." *Id.* at 49, 681 F.2d at 772. The gravamen of the court's reasoning was that without requiring changed circumstances, the government's use of the clause was so exculpatory that its contract would fail for lack of consideration. *Id.* at 44, 681 F.2d at 770.

In setting forth the limits on the use of the termination for convenience clause, the court in *Torncello* cites with approval a line of cases illustrating the requirement for a change in circumstances or expectations of the parties. *Id.* at 36–37, 681 F.2d at 766. Among the cases cited are several in which contracting officials believed that

as a result of a protest subsequent to award of the contract, the award had been improper. Accordingly, the contracting officials took corrective action that the court held entitled the terminated awardee to recover damages based on a termination for convenience. *G.C. Casebolt Co. v. United States*, 190 Ct.Cl. 783, 786–88, 421 F.2d 710, 712–13 (1970) (holding that a mistaken government directive to cease performance "will not be considered a breach but rather a convenience termination"); *Warren Brothers Roads Co. v. United States*, 173 Ct.Cl. 714, 722–23, 355 F.2d 612, 616 (1965) (holding that "when a contracting officer cancels a contract in compliance with a decision of the Comptroller General" the contractor is entitled only to termination for convenience damages); *John Reiner & Co. v. United States*, 163 Ct.Cl. 381, 389–92, 325 F.2d 438, 442–44 (1963) *cert. denied*, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964) (same).

By order dated March 1, 1988, the court requested the parties address the issue of whether there were "changed circumstances" such that the defendant could invoke the termination for convenience clause. At oral argument, however, Nationwide suggested that this court adopt a broad reading of *Torncello*. Specifically, Nationwide urged this court to read *Torncello* as prohibiting the government from invoking the termination for convenience clause if it "knew or should have known" that ABCO's lower bid was in fact responsive. In the past, this court has been reluctant to give *Torncello* such a broad reading, and, in light of the existing case law, declines to do so now.

Moreover, the court finds the present case distinguishable from *Torncello*. The "changed circumstances" doctrine in that case was applied in a situation in which the contracting officer's undisclosed intention made a mockery of his assent to the contract. This court finds that ingredient missing here. The sole purpose behind the application of the clause in *Torncello* was merely to exculpate the government. In this case, in contrast, the Air Force terminated the contract award to the second lowest bidder, Nationwide, after discover-

ing that the lowest bidder's bid had been improperly declared nonresponsive. In such a case, the Air Force is utilizing the termination for convenience clause to limit the government's liability and to correct an improper contract award in order to preserve the integrity of the competitive procurement process. *See* 48 C.F.R. § 14.404–1(a)(1). Hence, this case falls squarely within the parameters placed on the government's utilization of the termination for convenience clause as set forth in *Torncello*.

In addition, this court finds it significant that the Air Force reversed its opinion on the basis of Comptroller General Opinions *G & C Enterprises, Inc.*, B–178824 (Aug. 16, 1973) and *Robison, McCaskey, Strachan & Hoge*, B–170694 (Dec. 3, 1970), which held, in factual situations similar to the case before the court, that such defects were not sufficient to render a bid nonresponsive. *See also Perkin-Elmer*, 63 Comp.Gen. 529 (1984), 84–2 CPD ¶ 158 (sufficiency of bid bond is judged not on the form used, but on whether it represents a significant departure from the rights and obligations of the parties set forth in SF–24).

The Air Force's reliance on these Comptroller General decisions was upheld in the bid protest filed by Nationwide. In *Nationwide Roofing and Sheet Metal, Inc.* 64 Comp.Gen. 474, 476, 85–1 CPD ¶ 454 at 3 (1985), the Comptroller General stated that "we believe that the contracting agency's application of our decisions to this procurement was correct." The Comptroller General stated that in each of the decisions on which the Air Force relied, the bidder used a bid bond which listed a state rather than the United States as the obligee of the principal and surety. Therefore, the Comptroller General concluded that "since the intention of the surety and the principal to be bound by the bond and the identity of the United States as the intended and true obligee were clearly shown by the bond itself, we did not believe that the surety could successfully defend a suit by the United States on the bond." *Id.* Consequently, the Comptroller General held that

such bid bonds were enforceable as submitted. The Comptroller General then went on to note that USPS bid bond form 7324 is the same as form SF–24, with the exception of the name of the obligee. Noting the factual similarities between this case and GAO precedent, the Comptroller General held that ABCO's bid was in fact responsive and that the contract to Nationwide was properly terminated.

This court's reluctance to interfere with the executive procurement process is especially strong where, as here, the GAO has made a determination upholding the procurement officials on the merits. This court has held that:

> [I]t is the usual policy, if not the obligation, of the procuring departments to accommodate themselves to positions formally taken by the General Accounting Office with respect to competitive bidding. That Office, as we have pointed out, has special concern with, and supervision over, that aspect of procurement. It would be entirely justifiable for the contracting officer to follow the general policy of acceding to the views of the Accounting Office in this area even though he had another position on the particular issue of legality or propriety.

*John Reiner & Co.,* 163 Ct.Cl. at 390, 325 F.2d at 442; *see also M. Steinthal & Co., Inc. v. Seamans,* 455 F.2d 1289, 1304–05 (D.C.Cir.1971). Hence, it was reasonable for the Air Force to base its termination for convenience decision and subsequent award of the contract to ABCO upon deference to rulings by the Comptroller General. Once ABCO's bid was declared to be responsive, ABCO qualified as the lowest responsive bidder. Because procurement regulations require that the contract be awarded to the lowest responsive bidder, 48 C.F.R. §§ 14.404–1(a)(1), 14.407–1(a), the Air Force properly terminated Nationwide's contract for convenience.

This is not a case in which the Air Force awarded the contract to Nationwide while having knowledge of another lower responsive bid. Not to have terminated Nationwide's contract would have resulted in a violation of the procurement regulations by allowing a contract to be awarded to the second lowest responsive bidder. Further, Nationwide is not left without a remedy. The termination for convenience clause allows Nationwide to recover for the total cost of contract work performed prior to the date of termination, the cost of settling and paying termination settlement proposals under terminated subcontracts, a reasonable profit on the cost of the work completed, if any, and reasonable costs of settlement of the work terminated. A contractor terminated for convenience can also recover the cost of supplies delivered to the government. *See* 48 C.F.R. § 52.249–2.

■ Nevertheless, Nationwide claims that the Air Force's termination of the contract was "not in good faith, was reckless, willful, wanton and malicious." Other than a bald assertion that this contract was terminated due to "adverse publicity," Nationwide has failed to offer, and this court has failed to find, any material facts to substantiate these allegations.

■ Nationwide's failure to make a showing of bad faith is fatal to its claim. It is well settled that good faith conduct by government officials is presumed, subject to an extremely difficult showing by the plaintiff to the contrary. *Torncello,* 231 Ct.Cl. at 45, 681 F.2d at 771. In *Kalvar v. United States,* 211 Ct.Cl. 192, 198–99, 543 F.2d 1298, 1301–02 (1976), the Court of Claims stated:

> [I]t requires "well-nigh irrefragable proof" to induce the court to abandon the presumption of good faith dealing. *Knotts v. United States,* 128 Ct.Cl. 489, 492, 121 F.Supp. 630, 631 (1954).
>
> In the cases where the court has considered allegations of bad faith, the necessary "irrefragable proof" has been equated with evidence of some *specific intent to injure the plaintiff.* Thus, in *Gadsden v. United States,* 111 Ct.Cl. 487, 489–90, 78 F.Supp. 126, 127 (1948), the court compared bad faith to actions which are "motivated alone by malice."

The court went on to state that "[t]he mere fact that a contracting officer awards a contract to another company after terminating the plaintiff's contract is insufficient

to show bad faith." *Kalvar,* 211 Ct.Cl. at 199, 543 F.2d at 1302. Nationwide has offered no evidence whatsoever to satisfy this high standard of proof. Accordingly, this court holds that the Air Force properly terminated Nationwide's contract for convenience and that the termination for convenience clause controls with respect to the damages suffered by Nationwide.

### CONCLUSION

For the foregoing reasons, the government's motion for partial summary judgment, with respect to the propriety of the termination of Nationwide's contract, is granted. If necessary, damages to be awarded Nationwide in accordance with the termination for convenience clause will be determined in a future proceeding.