**ADVANCED MATERIALS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 94–620C.**

United States Court of Federal Claims.

Nov. 30, 1995.

481

Manfred Sternberg, Jr., Houston, Texas, for plaintiff.

Virginia K. DeMarchi, Washington, D.C., with whom was Frank W. Hunger, Assistant Attorney General, for defendant.

## ORDER

WEINSTEIN, Judge.

The parties have cross-moved for partial summary judgment on plaintiff's claim for breach of contract damages.[1] After oral argument, defendant's motion is granted, and plaintiff's cross-motion is denied.

The relevant facts are either not in dispute or, if not construed in plaintiff's favor, are not satisfactorily rebutted by evidence proffered by plaintiff that would be admissible at trial. See Lujan v. National Wildlife Fed'n,

497 U.S. 871, 884, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990).

The United States Army Chemical Research, Development and Engineering Center (CRDEC), located at the Aberdeen Proving Ground, Maryland, developed "Decontaminating Agent: Multipurpose" (DAM), a mixture of water, calcium hypochlorite (HTH), and cyclohexylpyrrolidone (CHP) with or without ethyl pyrrolidone, for the decontamination of equipment exposed to chemical or biological contaminants. Def. Ex. 1 at 12; Def. Ex. 3 at 1–2. On September 25, 1992, the Army "Procurement Directorate, SMCCR–PC," also located at the Aberdeen Proving Ground, awarded plaintiff Advanced Materials, Inc., (AMI) contract DAAA15–92–C–0084, a cost plus fixed fee contract to develop and test packaging for use of DAM in batch operations, i.e., preparation of DAM in the field by combining measured quantities of the components. Comp. ¶ 5; Def. Ex. 1 at 1, 7–9; Def. Ex. 3 at 2.

The contract stated, "Safety concerns involving spontaneous combustion, excessive heat generation, and violent reactivity when mixing HTH and the pure pyrrolidones have been investigated. No problems were observed." Def. Ex. 1 at 12. Procurement personnel were unaware, however, that CRDEC subsequently (but before the contract was awarded) changed the DAM formula by replacing the CHP with another solvent (because the original formula produced false positive results in tests for contaminants). Def. Ex. 3 at 2–3. They were not so informed because CRDEC did not expect the change to affect the packaging for batch operations. Id.

On October 26, CRDEC notified the procuring contracting officer (PCO) that it had recently encountered technical difficulties—rapid chemical reactions, excessive temperature, and increased toxicity—when the refor-

[1]. Defendant also moved to dismiss plaintiff's claim for termination costs, arguing that the court lacked jurisdiction under Dawco Construction, Inc. v. United States, 930 F.2d 872, 878 (Fed.Cir.1991), because the parties were not "in dispute" regarding these costs when the certified claim was submitted. After the motion was filed, however, Dawco was overruled by Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1576–79 (Fed.Cir. 1995), which held that the "in dispute" requirement applies only to vouchers, invoices, and other routine payment requests. Defendant then withdrew the motion to dismiss. The issue of termination costs thus is left for further proceedings.

mulated DAM was mixed in large quantities, and the PCO postponed the "start of work" meeting. Comp. ¶ 6; Def. Ex. 3 at 3–4; Pl. Supp. Ex. A. (Plaintiff alleges that the problems arose before the contract was awarded, Comp. ¶¶ 9–11, 13, but the record is ambiguous.) After CRDEC told the PCO that the formula would have to be modified substantially, she terminated the contract for the government's convenience, on November 16, Comp. ¶ 7; Def. Ex. 3 at 4; Def. Ex. 3B, and referred it to the termination contracting officer (TCO) for settlement, Def. Ex. 2 at 1; Def. Ex. 3 at 4.

■ On January 28, 1993, AMI submitted a settlement proposal for $35,337.55, in addition to the $49,444 it had already received, for a net settlement of $84,781.55. Def. Ex. 2 at 1; Def. Ex. 2A. On June 17, 1994, AMI submitted to both contracting officers a certified claim for $188,546. Comp. ¶ 16; Def. Ex. 2 at 3; Def. Ex. 2F. The claim asserted entitlement to settlement costs, plus lost profits, as damages for breach of the contract. The TCO responded that the termination settlement proposal was still being evaluated. Def. Ex. 2 at 3; Def. Ex. 2G. On September 6, AMI informed the TCO that it deemed its claim denied, and would file suit if no settlement were received within fifteen days. Def. Ex. 2 at 4–5; Def. Ex. 2J. The TCO responded that she would issue a final decision within sixty days. Def. Ex. 2 at 5; Def. Ex. 2L. AMI filed suit on September 21.[2]

■ The parties have cross-moved for summary judgment on AMI's claim for breach of contract damages for wrongful termination, specifically, for summary judgment on the question of whether the PCO acted in bad faith when she terminated the contract for the government's convenience. Plaintiff argues that CRDEC knew of the problems with the reformulated DAM before the contract was awarded, and that it therefore was an act of bad faith for the government to terminate the contract based on circum-

stances of which it was aware at the time of award.

Plaintiff relies on *Torncello v. United States*, 681 F.2d 756, 772 (Ct.Cl.1982), which held that the government may not terminate for convenience a contract into which it entered without intending to perform. Plaintiff concedes that the PCO, unlike CRDEC, knew nothing before the contract was awarded of the problems caused by the new DAM formula, Pl. Opp. ¶ 14, but contends that she should have known or must be deemed to have known. Defendant argues that constructive knowledge is insufficient, and that to find bad faith under *Torncello* requires actual knowledge on the part of the contracting officer. *Torncello*

stands for the unremarkable proposition that when the government contracts with a party knowing full well that it will not honor the contract, it cannot avoid a breach claim by averting to the convenience termination clause. In that case, the government entered into an exclusive requirements contract knowing that it could get the same services much cheaper from another outfit. When the contractor complained that the government was satisfying its requirements from the cheaper source and ordering nothing from it, in breach of the contract, the government said its actions amounted to a constructive termination for convenience. The court, not surprisingly, held that the government could not avoid the consequences of ignoring its promise to *that* contractor by hiding behind the convenience termination clause. If it could agree to buy services with no intention of doing so, the contract would fail for want of consideration. So the court enforced it as written.

*Salsbury Indus. v. United States*, 905 F.2d 1518, 1521 (Fed.Cir.1990). *Torncello*, 681 F.2d at 771–72, overruled *Colonial Metals Co. v. United States*, 204 Ct.Cl. 320, 494 F.2d 1355, 1360–61 (1974), which, under similar facts, allowed the government to terminate a contract in order to take advantage of a lower price elsewhere. (*Colonial Metals* has

---

2. On November 15, the TCO issued a purported final decision, finding that plaintiff had been overpaid $3,651, and was not entitled to damages for breach of contract. Pl. Ex. D at 2–4.

That decision is void, because, once suit was filed in this court, the TCO lost jurisdiction to issue a decision. *Sharman Co. v. United States*, 2 F.3d 1564, 1571–72 (Fed.Cir.1993).

been termed "[p]erhaps the high-water mark of courts' permissiveness in allowing the government to terminate for convenience." *Linan–Faye Constr. Co. v. Housing Auth.*, 49 F.3d 915, 924 (3rd Cir.1995).)

Because the contracting officer in *Torncello* had actual knowledge that the contract would not be performed, *Torncello*, 681 F.2d at 773–74 (Davis, J., concurring), the decision understandably did not discuss whether constructive knowledge would be sufficient. *Modern Systems Technology Corp. v. United States*, 24 Cl.Ct. 699, 704 & n. 5, *aff'd without op.*, 980 F.2d 745 (Fed.Cir.1992), is the only judicial decision involving *Torncello* in which agency personnel other than the contracting officer had knowledge of a problem but the contracting officer clearly did not. The case sheds no light on the question at hand, however, for it is not clear from the facts (the contracting officer, in the Postal Service's Washington, D.C., headquarters, terminated the contract after learning that an earlier contract, administered by the Service's Procurement Services Office, in Columbia, Maryland, covered the same services, *id.* at 700) whether the contracting officer should have been imputed awareness of the situation. *See also In re Providente*, 90–2 B.C.A. (CCH) ¶ 22,894, at 114,971, 1990 WL 52278 (P.S.B.C.A.1990) (similar facts); *In re Fiesta Leasing & Sales*, 86–3 B.C.A. (CCH) ¶ 19,-045, at 96,189, 1986 WL 19996 (A.S.B.C.A. 1986) (similar facts).

The Federal Circuit's rejection of the argument that *Torncello* imposes liability when termination is reasonably foreseeable based on information in the government's possession at the time of contracting, *see Salsbury Indus.*, 905 F.2d at 1521, *aff'g* 17 Cl.Ct. 47, 58–59 (1989), indicates that less than actual knowledge is insufficient to establish liability under *Torncello*. This court too has declined "to read *Torncello* as prohibiting the government from invoking the termination for convenience clause if it 'knew or *should have known*,'" based on existing information, that it would terminate the contract. *See Nationwide Roofing & Sheet Metal Co. v. United States*, 14 Cl.Ct. 733, 736 (1988) (emphasis added). *Torncello* itself does not prohibit a contracting officer from invoking the termination for convenience clause merely because

she "should have known," based on information possessed by someone else in the agency, that she would terminate the contract. That is, the case cannot be read to require less than actual knowledge on the part of the procurement officials to impose liability on the government for improper termination. *Cf. In re Brown*, 83–1 B.C.A. (CCH) ¶ 16,423, at 81,705, 1983 WL 7529 (I.B.C.A.1983) (suggesting without deciding that imputed knowledge is insufficient to establish liability under *Torncello* ).

For the reasons stated above, defendant's motion for summary judgment on the claim for contract damages is granted, and plaintiff's cross-motion for summary judgment on the damages claim is denied. Defendant shall file its answer within twenty days.