**INFORMATION SYSTEMS & NETWORKS CORP.,**
Plaintiff,

v.

**The UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., Defendants.**

Civil Action Nos. 96–2802, 97–187 (RCL).

United States District Court,
District of Columbia.

June 11, 1997.

Alan M. Grayson, James S. Del Sordo, Grayson & Associates, McLean, VA, for Plaintiff.

Darya Geeter, U.S. Attorney's Office, Washington, DC, for Defendants.

Terrence O'Donnell, Kevin Michael Hodges, John Thomas Parry, Williams & Connolly, Washinton, DC, for Intervenor, OAO Corp.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

On December 18, 1996, plaintiff Information Systems & Networks Corporation ("ISN"), a Maryland corporation with facilities in North Carolina engaged in creating and managing business systems, filed suit against the government[1], seeking entry of both preliminary and permanent injunctions against the defendants to enjoin them from refusing to extend an option contract and from awarding a new contract for the provision of certain goods and services to intervenor OAO Corporation ("OAO") and its subcontractor Technology Planning & Management Corporation ("TPMC"). Count I of the complaint alleged violations of the Competition in Contracting Act, and Count II alleged violations of the Administrative Procedure Act.

A preliminary injunction hearing was held before this court on January 15, 1997, at which time the court denied plaintiff's motion. Subsequently, plaintiff filed a related complaint, Civil Action 97–187. Subsumed into this action were Counts I and II of the first complaint, but a *Bivens* action against certain government employees has also been included.[2] For purposes of this opinion, the court deals exclusively with the terminology of the second action. That is, the first claim of plaintiff's second complaint alleges a *Bivens* action, the second claim alleges violations of the APA and federal statutes surrounding termination of ISN's contract as a result of the government's failure to exercise an option renewal, and the third claim of the complaint alleges violations of the APA and federal statutes in connection with the failure of ISN to be included in a competition for another contract. Plaintiff has sought relief under these claims and has also asked for reconsideration of its preliminary injunction motion. The complaints have been consolidated by order of February 4, 1997.

The government and the intervenor each have motions to dismiss and motions for summary judgment on each complaint. Upon consideration of these motions, the court will dismiss counts I and II of Civil Action No. 96–2802, and dismiss plaintiff's first and third claims from Civil Action No. 97–187. The second claim, the wrongful termination of contract claim, will be transferred to the Court of Federal Claims.

## BACKGROUND

The National Institute of Environmental Health Sciences ("NIEHS") operates a research facility in Raleigh, North Carolina. On December 1, 1993, it awarded a contract to ISN for the procurement of Federal Information Processing ("FIP") supplies. Comp. at 5. The contract allows NIEHS to issue task orders for items of an indefinite delivery/indefinite quantity. *Id.* Under this contract, ISN had a base contract consisting of the 1994 calendar year, with four renewable options. At time of the award, the contract price, including the use of all four options, was $19,000,000. *Id.* at 6.

The government exercised its first option at the end of 1994, extending the contract to December 31, 1995, and on December 22,

1. ISN named the United States Department of Health and Human Services, the National Institutes of Health, and the National Institute of Environmental Health Sciences as defendants.

2. ISN has now included as defendants Supervisory Contracting Officer Antoinette Bridges, Contracting Officer's Technical Representative Jimmy R. Washington, and other unnamed federal employees.

1995, the government exercised a second option, set to expire on December 31, 1996. Despite preliminary notice that another option would be exercised [3], on December 10, 1996, ISN was given notice that its third option period would not be taken by the government. The failure to exercise an additional option forms the basis for the second claim of plaintiff's complaint. ISN argues that this decision was made contrary to the Competition in Contracting Act ("CICA"), 41 U.S.C. § 253(b)(1)(1994)—the result of cronyism by a government contracting official—and ISN therefore seeks to force the government to exercise the option. The third claim of ISN's complaint deals with the government's efforts to obtain the items the contract with ISN would have supplied, and the government's alleged blacklist of ISN to keep it from competition for that new contract.

NIEHS operates a special program called the Chief Information Officer's Solutions and Partners ("CIOSP") program. Comp. at 5. CIOSP employs multi-year ID/IQ contracts utilizing cost-plus fixed fee, cost-plus award fee, time and materials, and firm fixed price task orders to provide information technology operation support and other services to the National Institutes of Health. *Id.* This program, authorized by the Federal Acquisition Streamlining Act of 1994 ("FASA") and codified at 41 U.S.C.A. § 253h (West Supp. 1996), allows for the issuance of ID/IQ "task orders" by the NIEHS to its 20 prime contractors. Def.'s Mem. of Points and Auth. in Supp. of its Mot. to Dis. Pl.'s Comp. at 23. To fulfill these task orders, should they be awarded, prime contractors are "teamed" with smaller subcontractors. Unisys was a prime contractor under the CIOSP program, and Unisys was teamed with ISN—which acted as a subcontractor. OAO, the intervenor in this case, is also a CIOSP prime contractor, and is teamed with TMPC.

ISN, in addition to the government's refusal to extend its contract, has also alleged that the COTR involved in determining which contractor to use for a task order which would take the place of the non-renewed ISN option, "blacklisted" ISN from consideration, violating the Administrative Procedures Act ("APA"). That task order contract instead went to OAO and its subcontractor TMPC. ISN alleges that the contracting officers in the government who were instrumental in making the determinations to end the ISN contract and award the task order to OAO did so in a manner which unlawfully deprived ISN of its civil rights.

The defendants have vehemently challenged the jurisdiction of this court to decide the termination of contract issue. As to plaintiff's complaint alleging wrongdoing in the failure to allow ISN an opportunity to compete in a bid, defendants have challenged ISN's standing as a subcontractor to complain of this competition which was directed at prime contractors—especially in light of the fact that ISN's prime contractor, Unisys, did not even compete for the task order in question. And, with respect to the *Bivens* claim, defendants argue that such an action is precluded by Congressionally provided remedies.

## DISCUSSION

### I. *Termination of Contract*

■ The government and the intervenor have moved to dismiss the second claim of plaintiff's complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).

■ Defendants, as federal agencies, are immune from suit unless the government has expressly waived that immunity. *Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 606 (D.C.Cir. 1992). Statutes waiving this sovereign immunity then determine the scope of the jurisdiction of the courts to hear such suits or to provide relief. *A & S Council Oil Co., Inc. v. Lader*, 56 F.3d 234, 238 (D.C.Cir.1995). The government and OAO argue that the govern-

---

3. On October 30, the contracting officer's technical representative ("COTR"), Jimmy Washington, indicated his intent to exercise option 3 to his contracting officer ("CO"), Diane Crawford. Def.'s Mot. to Dis., at 8. The following day, Crawford wrote ISN notifying it of the government's preliminary intention to exercise the option, with the caveat that ISN was not authorized to expend preparatory funds on the assumption that the option would be exercised, however. *Id.*

ment's decision whether or not to exercise the third option is essentially a contractual issue, governed by the Contract Disputes Act ("CDA"), 41 U.S.C. § 601–13 and the Tucker Act, 28 U.S.C. §§ 1491(a)(2). These laws place the exclusive jurisdiction to hear contract disputes with the Court of Federal Claims, explicitly depriving federal district courts from hearing such cases, when the amount in controversy, as here, exceeds $10,-000. *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C.Cir.1986).

As a result, defendants argue that this court is without jurisdiction to hear a breach of contract claim involving the federal government, and this, they say, is in reality a breach of contract claim to be heard, if at all, in the Court of Federal Claims.

ISN argues this is not a contract action, but is rather an issue of whether the government followed its own regulations for the continuation or termination of a contract. According to plaintiff, the situation which led up to the government's failure to exercise its third option to renew resulted in a termination contrary to the agency's own rules.

According to ISN, Diane Crawford, the CO for federal information processing resources for NIEHS, had the sole decision of whether or not to extend ISN's contract under the applicable procurement regulations, 48 C.F.R. §§ 17.207 [4]; 43.102 [5]; Pl.'s Opp. to Defs.' and Interv. Mots. to Dis. at 3. However, as plaintiff alleges in its renewed motion for a preliminary injunction and in its opposition to the motions to dismiss, it was through the scheming of the COTR, Jimmy Washington, that he managed to circumvent those procurement regulations by excising Crawford from the award process. Thus, Washington was to take work away from ISN and give it to a buddy at TMPC: OAO's teaming partner. ISN agrees that appeals from CO

decisions on breach of contract claims by federal contractors are properly brought in the Court of Federal Claims or boards of contract appeals. Pl.'s Opp. to Defs.' and Interv. Mots. to Dis., at 6. But plaintiff characterizes its suit in this manner: "ISN's suit is not an appeal from a contracting officer's decision; this is an appeal that the CO be allowed to *make* a decision." [Emphasis in original] *Id.* The proper characterization of this action will therefore determine whether or not there is proper jurisdiction in this court. The court finds there is not.

In *Ingersoll–Rand Co. v. United States*, 780 F.2d 74 (D.C.Cir.1985), the D.C. Circuit dealt with the question of when jurisdiction is appropriate in federal district courts as opposed to the court of claims or appeals boards in contract dispute or contract dispute-type cases, such as this. *Ingersoll–Rand*, relying on *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C.Cir.1982), held that to determine whether a plaintiff must avail himself of the Court of Federal Claims or whether he may have access to federal district courts depends on two basic factors: the source of the rights at stake, and the nature of the remedy requested. These two elements indicate whether or not the dispute is essentially one in contract, placing exclusive jurisdiction in the Claims Court.

### A. *Source of the Rights at Stake*

■ Plaintiff argues that its case is in reality one founded on the government's failure to follow proper regulations. It thus has not sought to explicitly word its complaints as breach of contract actions. Nor did the plaintiff in *Ingersoll–Rand*. A plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of regulatory or statutory provisions rather than breach of

---

**4.** 48 C.F.R. § 17.207 states, in part, that:

(c) the contracting officer may exercise options after determining that—
(1) funds are available;
(2) the requirement covered by the option fulfills an existing Government need;
(3) the exercise of the option is the most advantageous method of fulfilling the Government's need, price and other factors ...

(d) the contracting officer, after considering price and other factors, shall make the determination....

**5.** 48 C.F.R. § 43.102 states, in part, that:
(a) only contracting officers acting within the scope of their authority are empowered to execute contract modifications on behalf of the Government. Other Government personnel shall not—
(1) Execute contract modifications....

contract. *Ingersoll–Rand,* 780 F.2d at 77, citing *Megapulse,* 672 F.2d at 967. Rather, as did the *Ingersoll–Rand* court, this court must look to other factors to determine the true nature of the wrongful termination of contract claim. *Ingersoll–Rand* looked at a non-exhaustive list of three factors which allowed it to determine if the case before it was essentially contractual: (1) whether the dispute could be conceived of entirely within the terms of the contract, (2) whether the issues raised were within the unique expertise of the Court of Claims, and (3) whether the claim was really one of a "frustrated bidder."

### (1) *Can the ISN dispute be conceived of entirely within the terms of the contract?*

Defendants and OAO argue that ISN's second count of its complaint is really nothing more than a simple contractual dispute arising from the termination of a contract. But plaintiff argues that unlike *Ingersoll–Rand,* where the government regulation claimed to have been violated was itself written into the contract, allowing the contract to be read with those terms, such is not the case here. Rather, ISN asserts this case is more akin to *SRS Technologies v. United States,* 843 F.Supp. 740, 742 (D.D.C.1994) where this court found a "contract dispute" issue to be in actuality an APA issue, largely because the regulations at issue were not incorporated into the contract. Thus, the dispute was one of regulatory interpretation, not one of contract interpretation.

OAO points out, however, that the government has written the standard option clause of the Federal Acquisition Regulation ("FAR") 52.217–9, 48 C.F.R. § 52.217–9 into the contract.[6] This would bring the first of the *Ingersoll–Rand* factors squarely on point.

The court agrees. In *Continental Collection & Disposal, Inc. v. U.S.,* 29 Fed.Cl. 644, 649 (Fed.Cl.1993), the Court of Federal Claims examined an almost identical option provision in a government contract in a circumstance where the government decided not to extend the contract. That plaintiff, as ISN here, alleged that bad faith was the prime cause behind the failure to extend. Plaintiff appropriately argued that this constituted a breach of contract, and the court analyzed it as such. *See also, Krygoski Const. Co., Inc. v. U.S.,* 94 F.3d 1537, 1540 (Fed.Cir.1996) (stating that exercise of a termination for convenience clause, if done in bad faith, causes a contract breach). Put bluntly, ISN is not SRS.

But even if the option renewal procedure had not been written into the contract, plaintiff has still not overcome the fact that this case is essentially one sounding in contract. The core of plaintiff's second claim is the government's failure to extend it another option, a clear contractual issue—especially under FAR 52.217–9, the federal option clause. ISN has attempted to make this case about a different regulation, one which requires the contracting officer to make the decision to exercise contract options—and which incidentally lies outside the contract. ISN argues that Jimmy Washington, the contracting officer's technical representative, and Antoinette Bridges, the contracting officer's supervisor—neither of whom were the contracting officer—were responsible for the decision not to exercise the option. According to federal procurement regulations, it is the contracting officer who may exercise an option, and only contracting officers, acting within the scope of their authority, are empowered to execute contract modifications on behalf of the Government. *See,* Pl.'s Opp. to Defs.' and Interv. Mots. to Dis. at 3; 48 C.F.R. § 17.207, 48 C.F.R. § 43.102. (1997) Thus, plaintiff argues this is not a case under the CDA, but under the APA, and that OAO's contract

---

**6.** That these procedures are written into the contract can be found in plaintiff's own complaint, at para. 12. The ISN Contract includes FAR 52.217–9, "Option to Extend Services...." 48 C.F.R. § 52.217–9 (also known as FAR 52.217–9) reads:

(a) "[t]he Government may extend the term of this contract by written notice to the Contractor within ...; provided, that the Government shall give the Contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires. The preliminary notice does not commit the Government to an extention.

(b) If the Government exercises this option, the extended contract shall be considered to include this option provision...."

should be terminated and ISN's reinstated until Diane Crawford, the real CO, can make a decision pursuant to federal regulations.

This argument, however, fails for two reasons. First, it mischaracterizes what this dispute is about. The termination of the contract is essentially in the contractual realm, not in this tangential regulatory sphere. Secondly, Bridges was the CO's supervisor in this case. It strikes this court as odd that an underling, important though she may be, cannot be controlled by her supervisor to make an option decision, or cannot have decisions made on her behalf by a supervisor. Or, as the government claims, Crawford may have been removed altogether from decision-making authority with respect to exercise of another option. Either way, it leads back to plaintiff's true complaint, which is essentially one of bad faith termination—which leads back to issues of contract. Thus, the court finds the first element of *Ingersoll–Rand's* first prong has been met.

(2) *Expertise of the Court of Federal Claims.*

· While presumably any federal court can hear a bad-faith termination of contract claim, this is a type of issue frequently heard in the Court of Federal Claims. *See, e.g., Advanced Materials, Inc. v. U.S.*, 34 Fed.Cl. 480 (Fed.Cl.1995)(examining whether bad faith was at issue in the government's termination for convenience); *A–Transport Northwest, Co., Inc. v. U.S.*, 27 Fed.Cl. 206 (Fed. Cl.1992) (finding government's action in termination of a contract not motivated by bad faith). No doubt, then, that court is very capable of making these determinations. In fact, in *Ingersoll–Rand*, the court noted that this type of case "calls for knowledge of the government contracting process" and that courts must "implement the Congressional intent to provide a single, uniquely qualified forum for the resolution of contractual dis-

putes." 780 F.2d at 77. The second factor in the contract/regulatory equation is thus fulfilled under *Ingersoll–Rand*.

(3) *"Disappointed Bidder"*

Finally, the *Ingersoll–Rand* court noted that unlike a "disappointed bidder" or "frustrated bidder" action, where a contractor seeks to void the award of a contract to another and have it bestowed upon itself, *see Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970)—and where federal district courts may retain jurisdiction—the situation is not the same when a plaintiff complains of wrongful termination of its own contract. *See* 780 F.2d at 78. Thus, ISN's case is no different than that of the plaintiff in *Ingersoll–Rand*, with respect to the source of the right at stake.

B.  *Adequacy of Remedy*

The second prong of *Ingersoll–Rand*, adequacy of remedy, is of no better help to ISN either, concerning its termination of contract claim. The court there, again relying on *Megapulse*, indicated that the classification of a particular action depended upon what type of relief was sought and what type of relief was appropriate. ISN says it seeks only specific performance of the contract, which is unavailable in the Court of Federal Claims. But, as in *Ingersoll–Rand*, ISN has money damages available, and an argument that this remedy is inadequate is unavailing. *Ingersoll–Rand*, 780 F.2d at 80. Congress deliberately intended that contract disputes with the federal government be heard in the Court of Federal Claims, and deliberately intended that only certain relief be available. That ISN would rather have specific performance is of no concern in the scheme of federal jurisdiction. Therefore, it is the determination of this court that this court lacks jurisdiction over the second claim of plaintiff's complaint.[7] It will therefore be trans-

7. It is noteworthy that in *SRS*, plaintiff did not have even money damages available, nor did it seek specific performance. Comparing SRS's relief with specific performance, the court stated that "[h]ere, by contrast, the court is merely ordering [the Department of Defense] to cease violating its own regulations in dealing with SRS. Such relief is not the 'typical contract rem-

edy' that is properly awarded by specialized courts like the Court of Federal Claims alone." 843 F.Supp. at 743. ISN *does* seek typical contract relief—equitable and monetary. Though plaintiff's counsel has sought to copy SRS's style in the hopes of maintaining jurisdiction in federal district court, this is simply not the same case, as should now be clear.

ferred to the Court of Federal Claims, where jurisdiction properly lies.[8]

## II. *ISN's Failure to Recompete—Blacklist*

■ In the third claim of plaintiff's complaint, ISN alleges that it was blacklisted from an opportunity to compete for a CIOSP task order which would essentially have replaced the ISN contract which the government terminated. ISN argues that this violates the APA and the Competition in Contracting Act ("CICA"). Comp., at 13.

Both the government and the intervenor have sought to dismiss this claim for lack of standing. Specifically, they claim that ISN is merely a potential subcontractor to Unisys, the only entity capable of bidding for the task order in question. Thus, OAO and the government argue that ISN is not within the "zone of interests" protected by CICA and may not seek relief under that statute. *See,* OAO Corp.'s Mot. to Dis. and Opp. to Prelim. Inj. at 11; Def.'s Mot. to Dis. at 24–26. In fact, in *US West Communications Services,*

*Inc. v. U.S.,* 940 F.2d 622, 628 (Fed.Cir.1991), the Court of Appeals for the Federal Circuit pointed out that "although Congress originally contemplated a wide definition of parties who could protest bids under CICA, 'any person whose direct economic interest would be affected as contractor or subcontractor,'— the CICA, as enacted, provided for protest 'to a solicitation by a Federal agency,' and all references that would have permitted subcontractors to protest were deleted." *Id.* This determination that subcontractors could not be protesting parties kept with past practice of precluding subcontractor actions. *Id.* Accord, *Phoenix Eng'g. Inc. v. MK–Ferguson of Oak Ridge, Co.,* 966 F.2d 1513, 1526 (6th Cir.1992) (stating, "[w]e agree with the Federal Circuit [decision in *US West* ]. Potential subcontractors are not interested parties for the purpose of an action under CICA.")

But ISN argues that recent amendments to CICA now give subcontractors standing to

---

**8.** ISN has argued that *Ingersoll–Rand* should no longer be the standard because plaintiff believes Congress has recently amended the CDA to give federal district courts jurisdiction to render judgment on various procurement issues. The Administrative Dispute Resolution Act of 1996 ("ADRA"), 28 U.S.C. § 1491 (Supp.1996), has amended the jurisdictional reach of federal courts in bid dispute cases as follows:

"(b) (1) Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdication to render judgment on any action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether it is instituted before or after the contract is awarded.

(2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs."

ISN argues that this statutory extension of jurisdiction to federal district courts makes *Ingersoll–Rand* obsolete. But this is not so. ISN's claim with respect to termination of its contract is not a claim which deals with the objection to a proposed award, nor is it a claim alleging a "violation of statute or regulation in connection

with a procurement or a proposed procurement." It is a claim for wrongful termination of its contract. The amendments to the jurisdictional arm of the CDA appear to simply codify *Scanwell.* Though this court is wary of looking to legislative intent, if there is any ambiguity to what the statute does, it can be instructive. Sure enough, in H.R. REP. 104–879, in a discussion of ADRA, it is reported that

[t]he Senate amendment contained a provision modifying the jurisdiction of the United States district court over bid protests. Sometimes referred to as "Scanwell" jurisdiction, the current law permitted protests by disappointed bidders for government contracts to be filed in district courts as well as the United States court of claims. The Senate amendment would have withdrawn this district court jurisdiction and concentrated it within the court of claims.

The Senate amendment was not taken to the floor; instead, the Senate passed language including another compromise of the Scanwell issue, the House concurred, and the bill was signed by President Clinton on October 19, 1996. Clearly, then, these amendments deal with federal jurisdiction statutorily, allowing, in accordance with *Scanwell,* both jurisdiction to hear frustrated bidder actions in federal court, and also going beyond *Scanwell,* to allow injunctive relief in the Court of Federal Claims. But as this court has already determined, ISN's wrongful termination of contract claim is not one of a frustrated bidder. Therefore, the ADRA amendments do not apply.

8

sue. CICA now states that an "interested party" for purposes of the act "means an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or failure to award the contract." 31 U.S.C. § 3551 (1994), Federal Acquisition Streamlining Act of 1994 ("FASA"), Pub.L. No. 103–355, § 1401(a), 108 Stat. 3243, 3287 (1994). Interested parties have the power to protest a solicitation or other request by a Federal agency· for offers for a contract for the procurement of property or services. 31 U.S.C. § 3551(1)(A). ISN argues that, "in conjunction with its teammate Unisys," it is an "offeror" under FASA, whose direct economic interests are directly affected by the award of the task order. Pl.'s Opp. to Interv. Second Mot. to Dis., at 9.

The government, however, points out that recent, post-FASA opinions by the Comptroller General have held that this CICA provision does not confer standing on subcontractors. *See, e.g. Bullock Int'l.*, B–265982, 96–1 CPD ¶ 5, 1995 WL 760918 (Dec. 26, 1995). Furthermore, it, and OAO, challenge the fact that ISN could ever qualify as an "offeror". Though ISN did submit a proposal to Unisys, only Unisys, as a prime contractor, had the capability of participating in the CIOSP task order competition. Unisys never submitted a bid.

The court agrees with the defendant. The most tenable holding is that subcontractors are not intended for protection under CICA, and the amendments on which ISN centers its argument do not help its case. Though plaintiff's economic interest was directly affected by the recompetition, that is not enough. It must be at least an "offeror." Under the CIOSP competition, only prime contractors may submit bids for government task orders, so ISN could not be an offeror with respect to the government.

ISN has countered that the federal statute dealing with task orders states, in relevant part, that "all contractors awarded such contracts shall be provided a fair opportunity to be considered, pursuant to procedures set forth in the contracts, for each task or delivery order...." 41 U.S.C.A. § 253j(b) (West Supp.1996). ISN claims that it has not had a

fair opportunity to be considered. But ISN was not competing for the task order: only Unisys could do that. Unisys didn't.

The court does have reservations about dismissing this portion of the suit. If ISN were, indeed, blacklisted, and ISN's claims that Unisys was told it would not receive an award if it used ISN as a subcontractor, what recourse would ISN have? In fact, intervenor OAO begs this question in its own briefs. OAO, in an attempt to convincingly peg ISN as a subcontractor without standing, writes,

"[I]SN was designated as a subcontractor to Unisys and, under the rules of the CIO–SP program, a company could choose to 'team' as a subcontractor with only one CIO–SP prime contractor. Thus, neither Unisys nor its subcontractor ISN was a competitor for the task order at issue in this case."

OAO Corps.' Mot. to Dis. and Opp. to ISN's Mot for Prelim. Inj., at 2.

If Unisys could only use ISN, and ISN could only use Unisys, this is very problematic with respect to ISN's position if the government did, indeed, blacklist it. Unisys, the only party in a position to actually bid on a CIOSP contract, could decide that it would be better to forgo a bid rather than risk upsetting its relationship with the government by either insisting that it use ISN or by suing if the government failed to award. Thus, ISN would be frozen out of government work. ISN would be forced to sue Unisys, spoiling its relationship with its prime contractor.

This type of situation has been considered by other courts. In *Contractors Engineers Int'l., Inc. v. Dept. of Veterans Affairs*, 947 F.2d 1298, 1300 (1991), the United States Court of Appeals for the Fifth Circuit, considering the issue of whether a subcontractor could have standing under CICA to challenge a procurement decision, set forth a number of instances where a plaintiff subcontractor could have standing. Adopting criteria from a federal district court opinion from this district, *Amdahl Corp. v. Baldrige*, 617 F.Supp. 501 (D.D.C.1985) (Parker, J.), the Fifth Circuit allowed for a disappointed subcontractor to have standing to sue under CICA (i) when

the contractor acted as a purchasing agent of the government; (ii) where the government has caused or controlled the rejection or selection of a potential subcontractor; (iii) where agency bad faith or fraud in the approval of a subcontractor is demonstrated; (iv) where a contract was made "for" the government; or (v) where the agency is entitled to an advance decision. *Contractors Engineers*, 947 F.2d at 1300.[9]

Despite the plain meaning of CICA, which covers only contractors, actual or prospective bidders, and offerors with a direct economic interest, it is possible that under a *Contractors Engineers* analysis these meanings could be expanded to cover situations involving subcontractors as well, but not in this case. The only factors which could possibly be at issue here would be either the second factor, where the government controls the selection of the subcontractor, or the fourth factor, where bad faith is at issue. The problem for ISN was that Unisys never submitted its bid. The government did not pick subcontractors under the CIOSP program. Unisys, by its own agreement with ISN, selected it as a subcontractor. The fact that Unisys and ISN had to work together was not a decision controlled by the government, so ISN could not be swept into any possible zone-of-interest with respect to bidding in that regard.

With respect to bad faith on the government's part, though this is alleged, Unisys' failure to submit a bid with ISN as subcontractor also keeps ISN from CICA's purview. Had Unisys submitted a bid which the government rejected as a result of the inclusion of ISN as a subcontractor, this might give ISN standing, depending on the facts alleged. But that is not the situation here. ISN's complaint is more naturally directed at Unisys for failing to offer the bid to the government. This court need not concern itself with whether or not ISN has a cause of action against Unisys, as no claim has yet been sought.

The court has no choice but to dismiss ISN's third claim of its complaint for lack of standing.

### III. *Bivens Claim*

■ The court now turns to ISN's *Bivens* count against individual officers of NIEHS, especially Antoinette Bridges and Jimmy Washington, which forms the first claim of plaintiff's complaint. ISN alleges that these federal officers violated the Fifth Amendment to the United States Constitution by depriving ISN of rights to due process. Pl.'s Second Comp., p. 12. ISN seeks money damages in the form of a *Bivens* action against the individual defendants.

The government and OAO argue that a *Bivens* remedy should not be provided by the court. First, they argue that ISN has neither property nor liberty interests in either the extention of an option, a future contract, or in a relationship with its prime contractor, Unisys. Additionally, they argue that adequate postdeprivation remedies exist should a rights violation have occurred, and this precludes a *Bivens* action.

In *Bivens v. Six Unknown Fed'l Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the United States Supreme Court allowed, in certain circumstances, for causes of action against individual federal officials for constitutional violations. But *Bivens*, as a judicially created remedy, has been narrowed by the courts. In *Bivens* itself, the Court wrote that where there is an explicit Congressional declaration that injured parties be remitted to another remedy deemed equally effective by Congress, or where there are "special factors" counselling hesitation in the absence of affirma-

---

9. Defendant has proffered that potential subcontractors do not fall within the zone of interests protected by the relevant procurement statutes. *See, Rubber Millers Inc., v. U.S.*, 596 F.Supp. 210, 213 (1984) (holding that potential subcontractors did not have standing to sue under the Armed Services Procurement Act.) The court agrees that though this is generally true, there are circumstances which may lead to standing. In fact, the *Amdahl* or *Contractors Engineers* holdings are really no more than zone of interest analyses which ennumerate circumstances whereby standing may be found. *See, Contractors Engineers*, 947 F.2d at 1300 (stating, "[t]he *Amdahl* criteria[] relate principally to the zone-of-interest prong of the test for standing." But even under a zone-of-interest analysis, forgetting whatever qualms the court has about expanding upon the plain meaning of the statute, ISN would still fall short, as explained above.

**10**

tive action by Congress, this judicial power should not be exercised. *Id.* at 396–97, 91 S.Ct. at 2004–05.

ISN concedes that a *Bivens* action is barred at least when an existing federal statute provides an equally effective remedy. Pl.'s Opp. to Interv. Second Mot. to Dis., p. 20. Plaintiff challenges, however, the adequacy of its remedy under the CDA, believing it can be awarded only bid preparation costs.

Without leaping into a determination of what property or liberty interests might attach in a government contracts arena, it is sufficient to state only that the defendant concedes that a blacklisting by the government could give rise to a Fifth Amendment violation. Def.'s Reply to Pl.'s Opp. to Def.'s Mot. to Dis. Pl.'s Second Comp., p. 6–7. The government quarrels, nevertheless, with plaintiff's characterization of when *Bivens* actions are precluded. In addition to circumstances where an equally effective remedy is available, the government argues that where "there is a statutory scheme created by Congress in the field of government contracts that is sufficiently comprehensive to be deemed a special factor counselling against the creation of a *Bivens* remedy by the judiciary." *Id.* at 9. In other words, the fact that plaintiff feels its statutory remedies are inadequate is irrelevant if there is a comprehensive remedial scheme which Congress has put in place. The government then argues that the CDA and the ADRA amendments thereto provide just such a scheme.

The government is correct. In *Spagnola v. Mathis,* 859 F.2d 223 (D.C.Cir.1988)(en banc), the D.C. Circuit carefully considered the extent to which Bivens should be extended against federal officials, concluding:

> [c]ourts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently' omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve Bivens remedies.

*Id.* at 228. In fact, *Spagnola* made clear that if such a system exists, even if Congress provided "no remedy whatsoever," this is enough to preclude a *Bivens* action. *Id.*

(*citing Schweiker v. Chilicky,* 487 U.S. 412, 421–23, 108 S.Ct. 2460, 2467, 101 L.Ed.2d 370 (1988)). Thus, *Spagnola* concluded that a case-by-case examination of the particular administrative remedies available to a given plaintiff is unnecessary, given a comprehensive administrative remedial construct.

The real question, then, is not whether the CDA/ADRA remedy is as effective as judicially provided monetary damages against federal officials, but rather, whether the government contracts dispute regime is comprehensive in its provision of whatever remedies Congress has chosen to provide. The court finds it is.

Congress has provided bid protester remedies. ADRA provides that in bid protest actions, both the Court of Federal Claims and federal district courts have jurisdiction, in connection with a protest by an interested party, for any "alleged violation of statute or regulation in connection with a procurement or a proposed procurement." Further, "[t]o afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." Pub.L. 104–320, § 12(b)(1–2), 110 Stat. 3874, 28 U.S.C. § 1491(b)(2).

It is thus clear that Congress has set forth circumstances under which parties may be afforded relief, and the contract disputes system is clearly a comprehensive one. Thus, under *Spagnola,* ISN may not maintain a *Bivens* action against individual defendants.

### CONCLUSION

For the reasons stated above, counts I and II of plaintiff's complaint in Civil Action No. 96–2802 are dismissed, as are plaintiff's first and third claims of its complaint in Civil Action No. 97–187. With respect to the second claim of plaintiff's complaint in 97–187, which alleges wrongful termination of contract by defendants, this will be transferred to the Court of Federal Claims in accordance with applicable law.

A separate order shall issue forth date.